(No. 22702.—

CHARLES F. McKINLEY, Appellee, *vs.* GEORGE V. McINTYRE *et al.*—(ARTHUR A. SULLIVAN, Appellant.)

*Opinion filed April 12, 1935—Rehearing denied June 5, 1935.*

SHAW, J., dissenting.

ARTHUR A. SULLIVAN, and BARRE BLUMENTHAL, for appellant.

McKinney, Lynde & Grear, (Hayes McKinney, and Joseph M. Larimer, of counsel,) for appellee.

Mr. Chief Justice Jones delivered the opinion of the court:

At the general election on November 4, 1930, there was an election of twelve associate judges of the municipal court of Chicago. According to the canvass and proclamation of the canvassing board, George V. McIntyre received the twelfth highest number of votes and Charles F. McKinley received the thirteenth highest number of votes cast at said election for associate judges. McIntyre was declared elected and took the oath of office and assumed the duties thereof. Subsequently McKinley filed a petition to contest the election of McIntyre and the other associate judges who had been declared elected. For reasons which do not appear of record the contest was prolonged over a period of several years, and on July 15, 1934, McIntyre died. On the following day Arthur A. Sullivan, who was counsel for McIntyre during the contest, appeared before the county court of Cook county and suggested of record the death of McIntyre. On July 30, 1934, no elector of the city of Chicago having appeared within five days or at any time after the suggestion of McIntyre's death, the county court, pursuant to the provisions of section 22a of "An act to revise the law in relation to abatement," (Cahill's Stat. 1933, chap. 1,) designated Arthur A. Sullivan, an elector of said city, to appear, intervene and defend in this proceeding. The order found him to be a fit and proper person to be so appointed. The next day after his appointment Sullivan specially appeared for the purpose of questioning the court's jurisdiction over the subject matter and over the person of the appointee. He then moved to dismiss the proceeding on the following grounds: (1) That the proceedings should abate because of McIntyre's death; (2) the section of the

statute under which the purported appointment is made is unconstitutional, unreasonable and void; and (3) that said section is not retroactive. The court overruled the motion to dismiss the proceeding, and, having heard all the evidence, found that McKinley had received 395,098 votes and McIntyre had received 395,019 votes; that McIntyre had not been elected to the office of associate judge at said election but McKinley had been duly elected. A decree was entered in conformity with the findings, from which Sullivan has appealed to this court.

Previous to the enactment of section 22a of the Abatement act the law was settled by the decisions in *Olson* v. *Scully,* 296 Ill. 418, and *People* v. *Taylor,* 342 id. 88, that the death of the contestee in a proceeding to contest his election furnished ground for the abatement of the cause. Proceedings to contest an election to office were unknown to the common law, consequently they are purely statutory. In this State, if a constitutional amendment, a bond issue, a question of public policy or any public measure has been submitted to a vote of the people, the result of the election, as declared by the proper canvassing board, may be contested by any five electors of the State or subdivision thereof in which the election was held. (Cahill's Stat. 1933, chap. 46, sec. 117, par. 130.) The court in which the proceeding is pending shall allow any one or more electors of such State or subdivision to appear and intervene for the purpose of participation in the prosecution or the defense of the cause, and the court, if it deems it just, may tax the whole or some portion of the costs against the intervenors. In the event the election does not concern a constitutional amendment or a public measure but involves the election of a public official somewhat different provisions for a contest are provided by statute. (Cahill's Stat. 1933, chap. 46, sec. 118.) Thus, one elector of the State may contest the election of the Governor or of other State officers enumerated in section 99. (Cahill's

Stat. 1933, chap. 46, par. 112.) The contest is heard by the legislature in joint session. The election of a member of the General Assembly may be contested by any qualified voter of the senatorial district to be represented by the senator or representative whose seat is contested. The contest will be decided by the body to which the contestee claims to have been elected. The election of all other officers may be contested by any elector of the State, judicial division, district, county, town or precinct in and for which the contestee is declared elected. Cahill's Stat. 1933, chap. 46, sec. 112, par. 125.

Proceedings to contest the election of public officers have usually been instituted by a candidate who was defeated on the face of the returns but in his own name and capacity as an elector. We held in *Olson* v. *Scully, supra,* that the right to an office is not a property right and the right of an elector to contest an election exists only by virtue of the statute. Even the incumbent of an office has no property right in it or in the prospective fees of the office, and it is erroneous to say that he owns or has any title to the office. The suit to contest an election is *sui generis.* It is neither an action at law nor in equity, although the proceedings are conducted as cases in chancery and the requirements of service of process are the same as in chancery proceedings.

Where the contest proceeding is instituted by a defeated candidate against a successful candidate it has been referred to as an adversary proceeding as between them, and inasmuch as the statute, prior to the amendment, did not expressly provide for a survival of the proceeding after the death of a contestee, it was held in the *Scully* case that the public, alone, could not be said to have a sufficient interest to keep the cause from abating. This court plainly pointed out that inasmuch as the statute made no provision for the survival of the action after the death

of the contestee the proceeding should abate, and it was said that it is well settled in this State that a cause of action created by statute does not survive unless declared so to do by the statute itself or unless provision for its survival is made by some other statute. The decision in the case was predicated upon that rule of law, and the opinion of the court concluded in the following language: "It is settled in this State that in the absence of statutory provisions for the survival of a statutory proceeding such proceeding abates on the death of a party. There seems to be no provision in our statute for the survival of a case of this character upon the death of one of the parties. As this is conclusive of the rights of the parties it becomes unnecessary to review other points raised in this case." The views of the court upon this point were expressly adhered to in *People* v. *Taylor, supra.*

Both cases recognize the existence of legislative power to provide for survival of proceedings to contest an election and do so in unequivocal language. The General Assembly, with knowledge of the then existing law on the subject, amended the Abatement act by adding section 22a, which provides: "No election contest shall abate on account of the death of any contestee in such contest. Upon the suggestion of death of any contestee, any elector of the political subdivision in which the election was held may, within five days, appear and intervene in such proceeding and if no elector appears within that time, the court shall appoint one to intervene and defend and thereupon the court shall proceed to final judgment."

The legislative power to enact a law permitting a survival of an election contest cannot be denied. The General Assembly has a right to declare the obvious public interest in elections and to make all necessary provisions for carrying out the people's will. That public interest goes to the extent of favoring the incumbency of the person who receives the greatest number of votes at the election, other-

wise there would be no such thing as popular government. All statutory provisions relating to election contests are remedial in nature. Before the amendment to the Abatement act election contests between individuals for an office were, from the force of the statute and from that force alone, an adversary proceeding as between them, but no one can deny the right of the legislature to extend the provisions of the statute so as to give protection to the public interests. Those interests are no less involved in a contest over who was rightfully elected to a public office than they are in a contest as to whether a question of public policy did or did not receive a plurality of votes. A contest of the latter kind has never been recognized as a proceeding *in personam*, but has been authorized to proceed to final determination without defendants and without process. The amendment to the Abatement act endeavors to safeguard the right of the people to be governed by officers of their choice. It is remedial and protective, and it is a universal rule that such legislation shall be liberally construed. Our body politic would be in a hapless state unless the General Assembly can provide that the people's choice at an election may be placed in office notwithstanding the exigency of death of a contestee who through error or fraud has received a certificate of election.

It is urged that even though the subject matter of the statutory amendment lies within a proper legislative domain, nevertheless the terms of the amendment would permit the court to compel an elector to defend, and perhaps be mulcted in costs, without his consent and against his will. There is no reasonable ground for this contention. The various provisions of the statute relative to contests of election, even where the intervenors voluntarily appear, leave the adjudication of costs solely within the sound discretion of the court. And in this proceeding, although the contest was determined against the intervenor, no costs

were assessed against him and none were assessed against the estate of the deceased contestee.

No question involving the salary of the office is presented in the case. The right to salary may follow, as a result of the case, purely as an incident to the office but not by force of the decree. The court hearing the contest had no power to adjudge the rights to salary. The only scope of the decree is to declare who is entitled to the office. *Olson* v. *Scully, supra.*

It is further contended that the amendment was prospective, and therefore not applicable to election contests which were previously instituted. Numerous decisions of this court are to the effect that where an act merely changes the remedy or the law of procedure, all rights of action will be enforcible under the new procedure without regard to whether they accrued before or after such change in the law. (*Woods* v. *Soucy,* 166 Ill. 407; *Chicago and Western Indiana Railroad Co.* v. *Guthrie,* 192 id. 579; *People* v. *New York, Chicago and St. Louis Railroad Co.* 316 id. 452.) The amendment here involved became effective January 1, 1934. Judge McIntyre died more than six months after that date. He had neither a vested title to the office nor a vested right in any legal procedure which may have been instituted to contest his right to hold the office. The criticisms directed against the amendment because of alleged omissions and insufficiencies may be justified in a measure, but they are appeals to the consideration of the legislative branch of government rather than to the judiciary. It is sufficient to say that the General Assembly had the right, in the protection of the public interest, to provide that an election contest of this character should not abate.

For the reasons stated we are of the opinion the decree of the county court was correct, and it is therefore affirmed,

*Decree affirmed.*

Mr. JUSTICE SHAW, dissenting:

The appellant points out that the amendment to the Abatement act, if valid, has the effect of repealing an old and well settled rule that election contests abate on the death of the contestee, and that its validity should be carefully scrutinized; that paragraph 138 of chapter 46 (Cahill's Stat. 1933, p. 1267,) provides that every elective office shall become vacant, among other contingencies, upon death of the incumbent; that section 9 of the Municipal Court act (Cahill's Stat. 1933, p. 946,) provides for the filling of vacancies by election, and that to permit an election contest to proceed after the office becomes vacant amounts to allowing the court by judicial decree to fill the vacancy instead of requiring it to be filled by election, in accordance with the statute; that certain liabilities and consequences *in personam* follow upon the final decree in an election contest case, and that to permit or require anyone other than the legal representative of the deceased to appear and defend, taking the right away from the estate and placing it in the hands of a stranger, is to deprive the estate of the deceased of due process of law. On the other hand, it is contended by the appellee that it was the intention of the legislature to guarantee to a successful candidate his right to the office as conferred by the electors; that the legislature intended to provide for the survival of the action as a remedial measure, because of the two decisions of this court in *Olson* v. *Scully,* 296 Ill. 418, and *People* v. *Taylor,* 342 id. 88, holding that an action necessarily abates upon death of the contestee; that the contestant's right to the office is conferred by the election rather than by the decree of the court; that the act, being remedial, is to be liberally construed; that the prime purpose of the legislature was to provide a means for ascertaining who actually received the higher number of votes, and that the public has an interest in this question; that when an office is contested and the person who actually re-

ceived the larger number of votes dies during the contest, there is no vacancy unless the contest is decided in favor of the contestee.

Counsel for appellant state in their brief that they have been unable to find any case in this or any other jurisdiction which is in point on the main issues, and counsel for the appellee, although apparently equally diligent, have cited none. The parties agree, and there can be no doubt, that under the prior decisions of this court an election contest is an adversary proceeding *in personam,* the only persons having an interest being the contending parties, and that when a contestee dies the action abates. (*Olson* v. *Scully, supra; People* v. *Taylor, supra.*) In the *Olson case* we used the following language: "There was no provision under the common law for the election of an individual to office. Such matter is wholly statutory. There is no such thing as a common law right to hold an office but such right is purely statutory. The right to an office is not a property right. A public office is not property, nor are the prospective fees of office the property of the incumbent. An office is a legal right to exercise a public function or employment. It is not the subject of sale, purchase or incumbrance. The term 'office' implies a delegation of a portion of the sovereign power of the government to the person filling the office. It is erroneous to say · that an incumbent owns an office or has any title to it. (*Bowen* v. *Russell,* 272 Ill. 313; *People* v. *Barrett,* 203 id. 99; *People* v. *Kipley,* 171 id. 44; *Donahue* v. *County of Will,* 100 id. 94.) The right to contest an election is not a natural right and did not exist at common law. It exists in this State by statute and is neither an action at law nor in equity, though the proceeding is governed by rules of chancery practice.—*Brinkman* v. *Bowles,* 280 Ill. 27; *Bowen* v. *Russell, supra; Conway* v. *Sexton,* 243 Ill. 59; *Quartier* v. *Dowiat,* 219 id. 326; *Weinberg* v. *Noonan,* 193 id. 165; *Rodman* v. *Wurzburg,* 183 id. 395." In the

later case of *People* v. *Taylor, supra,* we re-affirmed and adhered to our language and holding in the *Olson case,* and in the opinion, referring to the Abatement act, used the following language: "Statutes in derogation of the common law are to be construed strictly. The so-called abatement statute, which may be more properly denominated a survival statute, abolishes the common law rule of abatement in those proceedings included within its scope. The act is therefore a change or limitation of the common law rule and provides for survival of actions of the character and under the circumstances therein described. It is not contended that the Primary act or any other statute of the State provides for survival of a contest proceeding."

On the collateral question of incidents to a public office I find two cases which have a bearing on the question before us. The first of these is *Mayfield* v. *Moore,* 53 Ill. 428, in which it was held that the legal right to hold an office confers upon the person so entitled to hold, the right to receive and appropriate the fees and emoluments legally incident thereto. In that case, which involved the office of sheriff, a certificate of election was issued to one of the candidates who appeared to have been elected. He was duly commissioned and entered upon the performance of the duties of his office, receiving the fees and other income therefrom. It was later judicially determined on an election contest that his opponent should have been declared elected, whereupon the opponent proceeded by assumpsit for the recovery of the fees received by the prior incumbent. It was held that the successful contestant was entitled to recover not only all such fees as had been collected by the incumbent subsequent to the judgment of the court but all that he had received from the time he took office, being allowed, however, because of an element of good faith, to retain his reasonable expenses incurred in earning the fees. The holding in that case was re-affirmed and adhered to in the later case of *Kreitz* v. *Behrensmeyer,*

149 Ill. 496, notwithstanding the change of constitutions that had occurred between the two decisions. In the case last cited the claim was enforced against the estate of the deceased incumbent, who had unlawfully held the office of county treasurer.

The Election law (chap. 46) provides for two different kinds of election contests. One of them, covered by sections 117 and 118, provides for a contest of the result of an election wherein such matters as constitutional amendments or a question of public policy or public referendum are involved. The procedure in such a case is more in the nature of an action *in rem*. The public is made a party and the voters are permitted to intervene, and while the court may grant a judgment for costs against intervenors, it is only against such as have voluntarily made themselves parties to the suit. It is provided that where the contest relates to a constitutional amendment or other public question of State-wide interest there shall be no defendant. No summons is provided for, but only notice to be filed with the Attorney General. As distinguished from this act and as a contrast thereto the other form of contest provided for is, as this court has always held, strictly an action *in personam*. The incumbent is the defendant in the case and must be served with summons in the same manner as is provided in cases in chancery. Neither the Attorney General, the State's attorney nor any body politic or corporate is made a party to the suit, and the action proceeds, as we have held, as an adversary proceeding, *in personam*. It is not contended in the briefs herein that it was the intention of the legislature by the amendment to the Abatement act to change the fundamental nature of the action to one *in rem*. Upon this point the appellee tacitly admits the necessity for an adversary in order that there may be any survivorship of the cause of action. From a constitutional standpoint, therefore, the case necessarily turns upon the sufficiency and the propriety of

the legislative attempt to provide such an adversary for the contestant, or, putting it the other way around, a representative for the deceased contestee. In the amendment to the Abatement act itself the legislature makes no mention of any public interest in the proceeding and uses no language to indicate an intention to guard the public's rights. So far as this theory of legislative intent is before us for consideration at all, it is merely a matter of inference drawn by the appellee, based on his arguments as to what he calls the unfairness of the common law rule as interpreted by our prior decisions. In order to sustain this view it is necessary for us not only to assume the existence of this intention but to indulge the presumption upon no other premise than above indicated. This line of reasoning, in my opinion, carries us outside of our judicial sphere and into the realm of legislation.

Elections were unknown at the common law, and both they and the procedure for contesting them are of purely statutory origin. (*Olson* v. *Scully, supra.*) The only authority, therefore, for contesting the election, and the foundation upon which this suit must rest, is to be found in the statute pertaining thereto and in the amendment to the Abatement act. In neither of these acts is the public interest mentioned, nor is there any language used which might be said to conflict with our previous holdings or to indicate any intention to change the action from one *in personam* to one *in rem.* Neither the State nor any political subdivision is made a party. Neither the State's attorney nor the Attorney General is required or permitted to intervene, nor may any other person in any way represent or interfere with the contestee so long as he lives. It is the apparent policy of the legislature to leave the determination and certification of the election results to the duly constituted administrative officers, trusting to the purely personal remedies which may be applied at the instance of interested parties to check and expose fraudulent

and unfair matters by such judicial procedure as has been provided and by providing penalties for certain frauds in order to discourage them. If the legislature intended the voter who is to be permitted to intervene or volunteer to be a representative of the public interest it would doubtless have said so and provided for his representation by the Attorney General or State's attorney. Nothing of the kind appears in the act, but, on the other hand, it is definitely provided that after he appears in the case he is "to defend the same." Furthermore, if it was the intention that this intervening voter should represent the public there would doubtless have been certain safeguards provided as to his selection. So far as this act is concerned, that selection is left as a purely arbitrary one on the part of the court. It is not required that he be either of the same or the opposite political party as the contestee, nor even that he be fair or neutral. No rule or guide is provided for the judge in this matter, and there is nothing in the act to prevent the court from making an appointment of a person whose interests might be directly opposed to the cause he is required to represent. The action of the court in this respect is not made subject to review. There is nothing in the act to prevent the intervenor from suffering a default judgment or from stipulating away the rights of the deceased contestee if he should happen to be so inclined. Neither is there any provision for the appointment, employment or compensation of counsel to represent the representative of the deceased contestee. I am of the opinion that the entire procedure attempted to be outlined is not only unreasonable but inappropriate for the protection of the public interest even if the matter should be considered as a proceeding *in rem,* and it is equally inappropriate and unjust as to the estate of the deceased contestee.

The primary purpose of an election contest is to determine the legality of the election of the man declared elected. No contest can be brought until someone has been declared

elected nor against any other person than he. It is true that where the contestant is an opposing candidate the statute provides that the court may, as an incident to its final decree, project the contestant into office. But this is an incident, only, and ancillary to the main purpose of the proceeding—*i. e.*, the trial of the right of the declared incumbent to hold the office. If the incumbent died before the filing of the election contest it could not even be contended that such a proceeding could be started for the mere purpose of having the unsuccessful candidate declared elected. This would be directly contrary to the provisions of the act declaring the office vacant under such circumstances and makes clear the ancillary and secondary character of the relief which was granted by this decree.

The question under consideration would be entirely different if there were nothing involved in an election contest except the right of the contestee to continue holding the office after the entry of a judgment, or, in certain cases, the right of the contestant to assume it at that time. On the record before us the right of the contestee to continue holding the office has been definitely terminated by his death, leaving nothing before the court for consideration but the possible right of the contestant to assume the position and·such further consequences of a personal nature as may follow. It must be conceded that a judgment *in personam,* at least for costs, may follow, and that certain personal rights and liabilities necessarily follow the result of such a decree. It is further obvious that after the death of the contestee no such liabilities can follow except to the detriment of his estate.

We have seen from the authorities cited above that a determination of the contest also determines the right, as between the contestant and the contestee, to the salary, fees and emoluments of the office during the time it has been held by the contestee. The central and vital issue in an election contest is the right to hold the office, and a

judgment against the incumbent on this issue would be forever decisive of it as between the parties and their privies. In the event of the contestee being defeated and the contestant thereafter bringing suit for the fees and salaries which the contestee received, the final judgment in the contest case would be an effectual estoppel on that issue, not only as to him but as against his heirs, executors and administrators, if the contestee died subsequent to the final judgment in the contest case. We have in this amendment, then, an attempt on the part of the legislature to substitute for a contestee, upon his death, a stranger to him and his estate. The suit at this state of the proceeding can have no further interest to the estate so far as any possible benefit or advantage is concerned but carries with it the possibility of a liability of the estate to the contestant. Under the act in question this stranger would have full control of this suit, neither restrained nor guided by any legal directions or obligations. He is not required to give any bond or provided with counsel or any means for obtaining counsel, nor is he in any way limited or restrained from confessing judgment, stipulating away valuable rights or neglecting his duties. Neither the duly appointed administrator or executor, if any, nor the next of kin of the deceased, are given any rights or protection. They are not permitted to intervene, but, on the contrary, would be forced to stand by without right of protest in a suit which might vitally affect their property rights. The law is elementary and long settled that one cannot be bound by a judgment to which he is not a party and in which he is neither actually nor theoretically heard. Any attempt to so bind him or his estate is not due process of law, and if this be construed as the intention of the legislature it is necessarily void.

Conceding the power of the legislature to set up such machinery as it sees fit for the protection of the public interest in elections, within constitutional limits, I am forced

to conclude that whatever its intent may have been in adding this particular amendment to the Abatement act, it falls short of accomplishing the ends claimed for it by the appellee or the effect given it by the county court of Cook county. The action itself remains essentially one *in personam,* with personal consequences. Upon the death of the contestee the office became vacant and the contest proceedings necessarily abated.