(No. 30581.—

THE PROGRESSIVE PARTY *et al.*, Appellants, *vs.* MICHAEL J. FLYNN *et al.*, Appellees.

*Opinion filed April 7, 1948.*

H. B. RITMAN, MILTON T. RAYNOR, EDMUND HAT-

FIELD, HART E. BAKER, and RICHARD F. WATT, all of Chicago, for appellants.

GEORGE F. BARRETT, Attorney General, of Springfield, and WILLIAM J. TUOHY, State's Attorney, BENJAMIN S. ADAMOWSKI, Corporation Counsel, and BERNARD J. KOR- ZEN, (WILLIAM C. WINES, JACOB SHAMBERG, GORDON B. NASH, L. LOUIS KARTON, AL F. GORMAN, and JOHN P. DALY, of counsel,) all of Chicago, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

In the judicial election held November 4, 1947, in Cook County, a political organization using the name of The Progressive Party, cast 313,847 votes, equalling forty-four per cent of all votes cast in the election, for Homer F. Carey, one of its candidates, for superior court judge. The election was a regular election, as defined by section 3 of article 1 of the Election Code, (Ill. Rev. Stat. 1947, chap. 46, par. 1-3,) for the purpose of electing twenty-one superior court judges in Cook County. Cook County is one judicial circuit. The said Progressive Party and its members are desirous of participating as a political party in the April 13, 1948, primary, to be held in Cook County for the nomination of offices of State's Attorney, recorder of deeds, clerk of the circuit court, clerk of the superior court, and coroner, all offices of Cook County; for a chief justice and twelve associate judges, a bailiff, and a clerk of the municipal court for the city of Chicago; for three trustees of the Sanitary District of Chicago; and for representatives to the United States Congress, from each of the twelve congressional districts lying wholly within Cook County; such candidates of such political subdivisions to be voted for and nominated at the primary election to be held April 13, 1948:

Thereupon the said Progressive Party, through George Cermak, its chairman, applied to the defendants, the mem-

bers of the board of election commissioners in the city of Chicago, and its members individually, as well as Michael J. Flynn, individually and as county clerk of Cook County, and Ludwig Schreiber, individually and as the city clerk of Chicago, and Edward J. Barrett, individually and as Secretary of State of the State of Illinois, for information whereby the Progressive Party could nominate candidates for the several above-named offices at said primary election in Cook County, and for the twelve congressmen in the said congressional districts within Cook County, and were advised by such officials that the Progressive Party, as a party, was not qualified to be placed upon the primary election ticket, and was not an established political party, legally entitled to nominate candidates in the April 13, 1948, primary election in said county. Plaintiffs thereupon filed a complaint in the Cook County circuit court against the defendants, praying for a declaratory judgment under section 57½ of the Civil Practice Act, (Ill. Rev. Stat. 1947, chap. 110, par. 181.1,) adjudging it was entitled to the right to participate in said primary election as an established political party.

The answer of the defendants, except the Secretary of State, in effect asserts: (1) that there is no Progressive Party; (2) that defendants are not under a duty to recognize the Progressive Party; and (3) that the defendants should receive no nomination papers for any officers to be voted for in said primary election under the label of Progressive Party. Said defendants also filed a counterclaim praying that the controversy be determined; that the court hold there is no Progressive Party, and that defendants have no duties to perform toward it, and for other relief. The defendant Secretary of State made a motion to dismiss for want of jurisdiction, because political questions are involved. This motion was denied by the circuit court. The circuit court denied the petition of plaintiffs, and dis-

missed the complaint. Plaintiffs have appealed to this court.

The defendant Secretary of State makes a motion here to dismiss for want of jurisdiction because the question was said to involve a political matter; and because making the Secretary of State a party defendant in his official capacity is equivalent to a suit against the State. The other defendants make a motion to transfer to the Appellate Court upon the ground that no question is raised upon which the Supreme Court has jurisdiction upon direct appeal.

The real question involved in this case is the right of those who are members of the Progressive Party, and of the plaintiff George Cermak, individually and as a member of the party, to vote in the April 13, 1948, primary, for candidates under the label of Progressive Party. If the relief prayed for in the complaint is granted, plaintiff Cermak may vote for Progressive Party candidates in the April primary, as may others who are members of such party, but, if relief is denied, Cermak has been deprived of the right or opportunity to vote under such party label.

The right to vote in an election constitutes a franchise, (*United States of America* v. *Hrasky*, 240 Ill. 560,) which would give us jurisdiction of this appeal. In the *Hrasky case* it is held that passing upon the right of the individual to be naturalized sufficiently involves his right to vote in elections so as to involve a franchise, allowing a direct appeal to this court. This case has been cited upon this question in *Tutun* v. *United States of America,* 270 U.S. 568, 70 L. ed. 738.

Appellees also urge that section 4 of article 7 of the Election Code prevents appellant, the Progressive Party, from qualifying as an established political party, because the vote qualifying it as a political party took place at a

judicial election, and appellants say if such is deemed to be a complete defense then said portion of article 7 is unconstitutional and void, as depriving legal voters of the right to nominate candidates, (*People* v. *Brady,* 302 Ill. 576,) and, further, that if section 4 of article 7 is not of itself invalid, yet, to enforce it as claimed by appellees would be to give it an unconstitutional effect. *Lee* v. *City of Chicago,* 390 Ill. 306.

The appellee Secretary of State contends that this court lacks jurisdiction because a purely political question cannot be adjudicated by a declaratory judgment, and cites *Daly* v. *County of Madison,* 378 Ill. 357, and *Fletcher* v. *City of Paris,* 377 Ill. 89, as supporting the principle that equity may not restrain an unlawful election, even though there is no other way in which taxpayers' property rights and public funds may be protected. The question arises, however, whether a declaratory judgment is an equitable proceeding and equivalent to a proceeding restraining an election. It seems that an application for a declaratory judgment is neither a proceeding at law nor in equity, but the application in this case is somewhat similar to an election contest, and may be designated as *sui generis,* as election contests have been designated, (*McKinley* v. *McIntyre,* 360 Ill. 382,) and like proceedings for contempt in tampering with ballot boxes. (*People ex rel. Rusch* v. *Fusco,* 397 Ill. 468.) An order declaring rights under the declaratory judgment law is not compelling in itself, but is merely a declaration of rights.

We are of the opinion that the motion of the Secretary of State to dismiss for want of jurisdiction should be denied, that the motion of all of the appellees to transfer the cause to the Appellate Court should also be denied, and that this court has jurisdiction of the case. *Atkins* v. *Atkins,* 386 Ill. 345.

The counterclaim filed by certain appellees asking for a declaration of rights on the same statute involved in

appellants' application is an admission by them that an "actual controversy" is involved as required by section 57½ of the Civil Practice Act. Appellee Barrett's request that in the event his motion was denied he be permitted to join his coappellees in their brief brings him into the same position as the other appellees. Furthermore, any question as to the existence of an actual controversy has not been briefed or argued by any of counsel.

The decision of this case depends upon the provisions of the Election Code relating to nominations of candidates. Nominations by political parties and by individuals are governed by articles 7, 8, 9 and 10. Article 7 in the main pertains to nominations under the primary law. Article 8 governs the nomination of members of the General Assembly. Article 9 provides the method for nominating of circuit, superior and Supreme court judges. And article 10 provides for nominations by other groups and by individuals. In order to properly apply the law to the present situation it is necessary to correlate all of these different articles, and the provisions in them, as applied to the facts appearing in this record.

Article 7 provides for the nomination of all candidates for all elective State, congressional, city and village, and incorporated town and municipal officers, and clerks of the Appellate Courts, and trustees of sanitary districts in the manner provided "in this Article 7." Judges and certain other officers are excluded from section 1 of article 7, because a special manner for their nomination is provided elsewhere in the act. Section 2 of article 7 makes five per cent of the vote cast in the last *general election* for *State* and *county* officers the qualifications of a political party entitled to nominate: (1) all candidates mentioned in section 1 of article 7; (2) congressmen; (3) county officers and State central committeemen, township, precinct and ward committeemen, as provided for in the act. Also five per cent of the vote cast in a *municipal election* is

required to qualify a political party for the nomination of candidates in city, village, town and other municipal offices.

It will be noted that the election in which the percentage of votes cast is made the test of being a political party is the "general election for State and County officers," or a "municipal election," with this exception, that section 4 of article 7 provides that while the definitions used in section 3 of article 1 shall control, yet in article 7 the terms "general election" or "municipal election," as used, shall not include a primary nor an election at which judges exclusively are elected. This exception does not apply to an election mentioned in any other article of the Election Code, and consequently only applies to the elections mentioned in article 7 and not to elections or nominations hereafter mentioned, and necessarily does not apply to article 8, providing for nominations for the General Assembly, or to article 9, providing for the nomination of judges by conventions; nor to any other elections other than those designated, *viz.*, "general elections for state and county officers," and the "municipal elections" enumerated in said article 7. As suggested above, nominations for members of the General Assembly, (art. 8) and of judges, (art. 9) are not involved in this case, other than that they are a part of the entire scheme for the nomination of officers of the State and its various subdivisions, which is the reason for most of the exceptions contained in section 1 of article 7.

The final provision for making nominations to political offices is to be found in article 10 of the Election Code. This article makes provision for the nomination of candidates for office by other groups that contain less than five per cent of the vote at previous elections, and by individuals. Article 10 is phrased in such a manner that nominations under it are limited to groups consisting of less than five per cent of the entire vote in the State, but if

such minority group of less than five per cent by petition places its candidate's name upon the ticket, and in the election which follows casts more than five per cent of the vote in such election, then it is declared to be an "established political party," entitled to nominate candidates under the provisions of article 7.

That such is the intention of article 10 may be derived from its language, as disclosed by essential excerpts following: (1) section 10-1 provides: "Political parties as hereinafter defined and individual voters to the number and in the manner hereinafter specified may nominate candidates for public offices whose names shall be placed upon the ballot to be furnished, as hereinafter provided," with this proviso: "no nominations * * * may be made under the provisions of this Article 10 by any established political party which at the general election next preceding, polled more than five (5) per cent of the entire vote cast in the State." This proviso clearly leaves under article 7 the cases in which the group cast more than five per cent. (2) Section 10-2 provides the term "political party" shall mean "established political party," when in a State election it casts five per cent of the entire vote for Governor. (3) Section 10-2 also provides: "A political party which, at the last election in any congressional district, senatorial district, county, township, school district, park district, municipality or other district or political subdivision of the State, polled more than five (5) per cent of the entire vote cast within such congressional district, * * * is hereby declared to be an 'established political party' within the meaning of this Article as to such district, political subdivision or municipality." (4) Section 10-2 then provides for the nomination by petition, signed by a certain number of persons in the State, or in the subdivision, entitling such groups to place a candidate upon the ticket as a new political party. (5) Section 10-2 then provides "The filing of such petition shall constitute the said political

group a new political party, for the purpose only of placing upon the ballot at such next ensuing election said list of party candidates  *  *  *." (6) It also provides: "If, at such ensuing election, the candidates of said new political party, or any candidate or candidates of said new political party shall receive more than five (5) per cent of all the votes cast at such election, in the State, or in any district or political subdivision of the State, as the case may be, then, and in that event, such new political party shall become an established political party within the State or within such district or political subdivision less than the State, as the case may be,  *  *  *  and shall thereafter nominate its candidates for public offices to be filled in the State, or such district or political subdivision of the State, as the case may be, under the provisions of the laws regulating the nomination of candidates of established political parties at primary elections and political party conventions, as now or hereafter in force." (7) Section 10-2 concludes by giving the "established political party" thus created the same rights given political parties under article 7 of nominating a candidate, selecting a party committeman, and controlling its political affairs until the next ensuing primary election, at which the new political party shall be entitled to nominate and elect any party committeemen under any parts of the Election Code relating to the organization of political parties.

When all of these provisions contained in sections 1 and 2 of article 10 are condensed and analyzed it appears that an individual or group of less than five per cent have a right to place a name upon the primary ballot by petition, with the requisite number of signatures. If such group or political party in the ensuing election polls more than five per cent of the vote in such election, then it becomes an "established political party" for the subdivision in which the election was held and is entitled to the identical rights to which political parties are entitled with a like percentage

of votes under article 7. The object of the statute is to permit a group desiring to become a new political party to be promoted into an "established political party," with the same rights as any other political party, when it polls five per cent or more of the vote at the ensuing election. The rights given political parties under both articles 7 and 10 are so specifically defined that the provision of section 2 of article 10 which permits the designation "established political party" where at the last election "in a county or * * * political subdivision" it received more than five per cent of all votes cast, is not modified by the provisions of section 4 of article 7.

What is said herein is a declaration of rights as authorized by section 57½ of the Civil Practice Act and is not to be construed as containing any expression of opinion as to the necessity or character of consequential relief necessary to give force to the judgment, nor do we express any opinion as to the impossibility of compliance with statutory requirements at this time, nor as to any of the issues that may arise on any application for such relief.

With this understanding of the law, its application to the facts in this case is not difficult. The plaintiff in this case, The Progressive Party, by petition placed the names of the twenty-one candidates for superior court judge on the ballot for the election held in Cook County on November 4, 1947. At this election its highest candidate received 313,847 votes, or forty-four per cent of the entire vote cast. Under the provisions of section 2 of article 10 it became an "established political party" and entitled to nominate its candidate in the next primary election held in Cook County for county or congressional offices contained wholly within the county.

It is not barred from coming into the primary of April 13, 1948, because, under the provisions of section 2 of article 10, Cook County was a political subdivision, in which a political group placed the names of candidates upon

the ticket by petition and polled five per cent or more of the votes cast, and so became an "established political party," qualifying it to participate in the next primary election.

A construction will be given a statute which will sustain it in preference to one which would render it invalid. (*Great United Mutual Benefit Ass'n* v. *Palmer,* 358 Ill. 276.) If it is susceptible of two constructions it should be so construed, if possible, as to render it valid. *Hanover Fire Ins. Co.* v. *Harding,* 327 Ill. 590; *Peoples Gas Light and Coke Co.* v. *Slattery,* 373 Ill. 31.

The legislative history of this 1936 amendment embodied in section 4 of article 7 makes clear its real purpose,—to prevent a political party from being disqualified from participating in a primary election by reason of its failure to name candidates in a preceding judicial election. It may be gathered from such history that the purpose was to permit the major political parties to join in coalition tickets for judicial candidates without losing their standing as political parties at the ensuing primary election. (See House Journal, 59th G.A. 3d spec. sess. pp. 4 and 5; Laws of 1936, 3d spec. sess. p. 9.) This amendment does not apply and was not intended to apply to a political party entitled to nominate because it became such as a result of provisions of section 2 of article 10.

From these considerations we are of the opinion that the circuit court of Cook County erred in entering the declaratory judgment against the plaintiffs, and we are of the opinion and do so declare, that the Progressive Party in this case is an established political party in Cook County and in each of the twelve congressional districts within said county. We further adjudge and declare that the provision of law contained in section 4 of article 7, providing that elections at which judges only are elected shall not constitute an election designated in said article, does not apply to the plaintiffs in this case, because of the pro-

visions of article 10, and the fact that plaintiffs qualified as an "established political party" at said judicial election of November 4, 1947, does not operate to deprive the appellant The Progressive Party of the right to participate in the primary election to be held on April 13, 1948.

The judgment of the circuit court of Cook County is reversed, and the cause is remanded, with directions to take such further action as is consistent with the views herein expressed. The clerk is directed to issue mandate forthwith.

*Reversed and remanded, with directions.*