WILLIAM BENOIT *vs.* HERMAN HATHAWAY.

Worcester.     September 23, 1941. — December 8, 1941.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Workmen's Compensation Act,* Liability of one person engaged in common employment for injury to another, Employee of independent contractor. *Actionable Tort. Municipal Corporations,* Contracts, W. P. A. project. *Contract,* With municipality. *Federal Relief. Federal Compensation Act. Negligence,* Toward W. P. A. worker.

An employee of the Federal Works Progress Administration at work in April, 1938, upon a project in a town insured under the workmen's compensation act was not precluded by any relationship between the Federal government and the town from recovery at common law against a motor truck operator, employed by the town on the same project, for personal injuries caused by such operator's negligence.

Payments, received by an employee of the Federal Works Progress Administration under U. S. C. Title 5, § 751, as compensation for injuries received while at work upon a project, did not, by reason of anything in §§ 776, 777, bar an action at common law by the employee against one "other than the United States" whose negligence caused his injuries.

TORT. Writ in the Second District Court of Southern Worcester dated August 15, 1938.

On removal to the Superior Court, the case was heard by *Broadhurst,* J., who in substance found that, due to negli-

gence of the defendant, a motor truck operator, hired and paid by the town of Uxbridge, in transporting gravel to a W. P. A. project where the plaintiff was working, the plaintiff was struck by the truck. He ruled: "Unless . . . the plaintiff was an employee of the town and thus limited to seeking a remedy under the workmen's compensation act, he is entitled to recover in this action"; found that the plaintiff "was not an employee of the town," and ruled that he had "no remedy under the workmen's compensation act." He consequently found for the plaintiff in the sum of $3,500. The defendant alleged exceptions.

In the bill of exceptions it is stated: "It is not contended that Hathaway [the defendant] was a W. P. A. employee. It was admitted by both parties that Hathaway was an employee of the town." "It is agreed by the parties that the plaintiff is a W. P. A. employee."

*D. H. Fulton,* for the defendant.

*P. J. O'Malley,* for the plaintiff.

Cox, J. This is an action of tort brought by one who was employed on a project of the Federal Works Progress Administration, hereinafter referred to as the W. P. A., in the town of Uxbridge, to recover damages for personal injuries that were found to have been caused by the negligence of the defendant, an employee of the town. The case was heard by a judge of the Superior Court sitting without jury. It was agreed that both the plaintiff and the defendant were engaged in work in connection with the "same operation" for the town.

There was evidence that the town had "arrangements" with the W. P. A. to assist in the work of resurfacing a town way. Evidence as to the "arrangements" was to the effect that the agency in the town responsible for any work, in this case the highway commissioner, selected, with the approval of the selectmen, the jobs to be done and requested the "pursuit of the job" from the W. P. A. A preliminary estimate of the cost was made and submitted to a W. P. A. officer, by whom it was reviewed. The highway commissioner testified: "Any corrections necessary are made by us and from there it goes through their pro-

cedure to Washington, and back again to the district office. We receive a notice, either from the district office or from the State office . . . that that project is allowed and so a certain amount of Federal money is allowed on the job. We must furnish some money ourselves and I believe it is twenty-five per cent of the total cost of the job at the present time. At that time [evidently referring to the project in question] I don't know exactly what the percentage was that the town had to furnish. Then the agency requesting the project's allowance requests the W. P. A. to open the project through the district office." The W. P. A. labor was taken from a certified list of men furnished by the town, but the town paid no W. P. A. workers employed on the project in question, or on any other project in the town. The town paid the truck drivers and for gravel. The highway commissioner also testified that he could not exercise control or jurisdiction over the plaintiff as to where he should work; that after the work was finished, he checked to see whether it was done according to his requirements, as part of his town duties, checking both the work of the W. P. A. workers and that of the town employees; that as far as he could, he specified the quality of work to be done; that he showed the W. P. A. foreman what was to be done according to the estimate that was submitted to the W. P. A.; that he could make a complaint to this foreman if anything was wrong, but could not direct the operation of the job; that the only control he had over the defendant was that of assigning him to the job; that so far as the method of transporting the gravel was concerned, it was under the control of the W. P. A. foreman; and that after he hired the defendant and told him what he was to do in the way of carrying gravel and from what bank, he had nothing more to do with him. The town was insured under the workmen's compensation law from April 2, 1938, to April 2, 1939, under a policy that was issued on April 12, 1938, and the plaintiff was injured on April 7, 1938. It was admitted by the plaintiff that he had received certain compensation payments from the Federal government.

The trial judge found for the plaintiff and denied certain

requests for rulings of the defendant, subject to his exceptions. The bill of exceptions states that it is directed to the question whether, "as a matter of law, such a relationship existed between the plaintiff and defendant, on account of the common source of their employment or on account of the conditions under which they worked, however they may be legally described, so as to prevent recovery by the plaintiff against the defendant." The defendant contends that there was error in the denial of his first request that, as a matter of law, upon all the evidence, the plaintiff is not entitled to recover. He contends that the plaintiff comes within the rule stated in *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565. He concedes, in effect, that the finding was correct that the plaintiff was not an employee of the town, and states the problem to be whether the W. P. A., in theory of law, occupied a position equivalent to that of a subcontractor. Even if we assume that the rule in the *Clark* case is applicable to cities and towns, we are of opinion that the town is not the general contractor or "common employer," the insurance of which "throws its shadow over the whole work" unless there has been a reservation of common law rights. (See page 568.)

The record in the case at bar as to the precise relationship between the Federal agency or government and the town is meagre. Apart from the description of the "arrangements," hereinbefore set out, we find very little more than references to the "W. P. A." The judge found that the work in question was begun as a "so called W. P. A. project. That is, the selectmen of the town had secured the approval of the Federal Works Progress Administration . . . of a program of street and highway improvements to be carried out in the town during 1938." The plaintiff was injured on April 7. Reference is made in the defendant's brief to 49 U. S. Sts. at Large, 115, which is a joint resolution passed on April 8, 1935, making appropriations for relief purposes. Another joint resolution, 50 U. S. Sts. at Large, 352, was passed on June 29, 1937, and makes appropriations for relief purposes. The funds last appropriated were to remain available until June 30, 1938.

Reference is made by the defendant in his brief to a provision in § 6 of c. 48 of said 49 U. S. Sts. at Large, 115, 118, by the terms of which the President is authorized to prescribe such rules and regulations as may be necessary to carry out the joint resolution. Section 1 of said c. 48, 49 U. S. Sts. at Large, provides, among other things, for loans or grants, or both, for projects of street and highway improvements in various subdivisions, including municipalities, where, in the determination of the President, not less than twenty-five per cent of the loan or the grant, or the aggregate thereof, is to be expended for work under such particular project. The joint resolution commences by stating "That in order to provide relief, work relief and to increase employment by providing for useful projects, there is hereby appropriated . . . [money] to be used in the discretion and under the direction of the President . . . ." (See 49 U. S. Sts. at Large, 115.) The joint resolution of June 29, 1937, c. 401, 50 U. S. Sts. at Large, 352, begins by stating "That in order to continue to provide relief, and work relief on useful public projects . . . there is hereby appropriated . . . [money] . . . to be used in the discretion and under the direction of the President . . . ." It is further provided in § 1 that "no non-Federal project shall be undertaken or prosecuted under this appropriation unless and until the sponsor has made a written agreement to finance such part of the entire cost thereof as is not to be supplied from Federal funds." (Page 353.)

It is unnecessary to set out the various provisions of the Federal emergency relief acts, reference to which has already been made, or of those of May 12, 1933, 48 U. S. Sts. at Large, 55, as amended February 15, 1934, 48 U. S. Sts. at Large, 351, or the provisions of later acts found in 52 U. S. Sts. at Large, 809, 53 U. S. Sts. at Large, 927, and 54 U. S. Sts. at Large, 611, or of c. 90, 48 U. S. Sts. at Large, 195, 200, adopted June 16, 1933, § 1 of which begins by stating: "A national emergency productive of widespread unemployment and disorganization of industry, which burdens interstate and foreign commerce, affects the public welfare, and undermines the standards of living of the American

people, is hereby declared to exist." The declared policy of the Congress included that of reducing and relieving unemployment and improving the standards of labor.

The only contractual relationship between the Federal government and the town in the case at bar arises from the requirement of the Federal statute that the town shall agree in writing to finance such part of the entire cost of the project as is not to be supplied from Federal funds. Running through all the laws enacted, the purpose of the Federal government is found to be to relieve unemployment directly, through projects, so called. The plan of employment involved the doing by the government itself of these projects, which, as in the case at bar, theretofore were carried on by the municipalities themselves with some possible assistance from the Commonwealth and county. But we view these projects as undertaken not for the benefit of the municipality, but primarily for the purpose of relieving unemployment, and incidentally for the utility and convenience of the general public, as distinguished from the municipality itself.

The relationship between the Federal government and a municipality arising in somewhat similar situations has been considered in some cases. See *Balter* v. *Ickes*, 89 Fed. (2d) 856, 858; *Haga* v. *Seattle*, 3 Wash. (2d) 31; *Oklahoma City* v. *Caple*, 187 Okla. 600; *Shelton* v. *Greeneville*, 169 Tenn. 366; *Walter* v. *Everett School District No. 24*, 195 Wash. 45; *Hughes* v. *Duluth*, 204 Minn. 1, 3; *Jones* v. *Industrial Commission of Ohio*, 64 Ohio App. 36; *Pittman* v. *Wichita Falls*, 120 S. W. (2d) 847; *Dabelstein* v. *Omaha*, 132 Neb. 710; *Waco* v. *Hurst*, 131 S. W. (2d) 745; *Heidt* v. *State Highway Department*, 189 S. C. 310.

In the light of what has been said in some of the cases to which reference has been made, and from an examination of the Federal statutes, three things stand out: (1) the W. P. A., as a Federal agency, is concerned only with the question of unemployment; (2) before any project can be approved and commenced, the "sponsor" is required to make "a written agreement to finance such part of the entire cost thereof as is not to be supplied from Federal

funds" (50 U. S. Sts. at Large, 352, 353); (3) once the project is approved, no town official or agent has any authority over it. It would seem to follow that once the project is approved, the W. P. A. carries it through, provided the appropriation is not exhausted, and all that the sponsor has to do is to fulfill the provisions of its written agreement. The Federal legislation upon this subject is premised upon the avowed purpose to provide relief "in the United States and its Territories and possessions." For this purpose, money is appropriated out of the Federal treasury. The sums appropriated are to be expended under the direction of a Federal agency and by Federal employees, and if a town, as in the case at bar, by virtue of the requirement that it make a written agreement to finance a part of the entire cost of a project, assumes a contractual relationship, we are of opinion that no such relationship is created between the Federal government and the town as to bring the plaintiff in the case at bar within the scope of *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565.

The emergency relief appropriation act of 1935, c. 48, 49 U. S. Sts. at Large, 115, provided, in § 2, that the provisions of c. 13, 48 U. S. Sts. at Large, 351, relating to disability or death compensation and benefits should apply to W. P. A. workers. This provision is found in subsequent appropriation acts. See c. 401, § 8, 50 U. S. Sts. at Large, 352, 356. The reference is to the Federal compensation act, c. 458, 39 U. S. Sts. at Large, 742, 749. In the case at bar, the plaintiff received certain compensation payments under U. S. C. (1934 ed.) Title 5, § 751. It should be noted that § 776 in substance provides that, if an injury for which compensation is payable is caused under circumstances creating a legal liability upon some person other than the United States to pay damages therefor, the commission may require the beneficiary to assign to the United States any right of action he may have to enforce such liability of such other person or any right which he may have to share in any money or other property received in satisfaction of such liability of such other person, or the commission may require said beneficiary to prosecute said

action in his own name; and § 777 provides: "Adjustment in case of receipt by employee of money or property in satisfaction of liability of third person. If an injury or death for which compensation is payable under this chapter is caused under circumstances creating a legal liability in some person other than the United States to pay damages therefor, and a beneficiary entitled to compensation from the United States for such injury or death receives, as a result of a suit brought by him or on his behalf, or as a result of a settlement made by him or on his behalf, any money or other property in satisfaction of the liability of such other person, such beneficiary shall, after deducting the costs of suit and a reasonable attorney's fee, apply the money or other property so received in the following manner: (A) If his compensation has been paid in whole or in part, he shall refund to the United States the amount of compensation which has been paid by the United States and credit any surplus upon future payments of compensation payable to him on account of the same injury. Any amount so refunded to the United States shall be placed to the credit of the employees' compensation fund. (B) If no compensation has been paid to him by the United States, he shall credit the money or other property so received upon any compensation payable to him by the United States on account of the same injury." There is nothing in these sections to prevent an injured employee of the United States, upon his own initiative, from bringing an action against a third party (other than the United States) to recover for injuries sustained through the latter's negligence, or to require him to make an election to bring such an action or accept compensation, or that provides that the acceptance of compensation effects an assignment to the United States. And there is no limitation upon the freedom of action of an employee of the United States in the pursuit of a party, other than the United States, who has caused him personal injury. See *Wood* v. *Ford Garage Co. Inc.* 162 Misc. (N. Y.) 87; affirmed 252 App. Div. (N. Y.) 921; *Oklahoma City* v. *Caple,* 187 Okla. 600; *Dempster Mill Manuf. Co.* v. *Wiley,* 131 S. W. (2d) 257, 260.

Accordingly, we are of opinion that the plaintiff is not barred from recovery under the rule of *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565, and that the contention of the defendant that he is cannot be sustained.

*Exceptions overruled.*