## UNITED STATES v. CITY OF COLUMBUS.

### Civ. No. 207.

District Court, D. North Dakota, N. W. D.
Dec. 3, 1943.

Harry Lashkowitz, Asst. U. S. Atty., of Fargo, N. D., for plaintiff.

Halvor L. Halvorson, of Minot, N. D., for defendant.

VOGEL, District Judge.

The United States of America, plaintiff herein, by its complaint seeks to recover from the City of Columbus, a municipal corporation, defendant, the sum of $3,729.-90, which is the amount expended by the plaintiff for cost of materials and labor in the construction of a WPA project located in the City of Columbus. The basis of plaintiff's cause of action is:

"That this Defendant, without the knowledge of the Works Progress Administration, and contrary to and in violation of the Emergency Relief· Appropriation Act of 1937, and the rules and regulations issued thereunder, did convert the project herein, to wit:

"The community recreation building, located at Columbus, North Dakota, herein mentioned, in that the said Defendant leased same to a private individual for the operation of a liquor store. * * *"

The defendant has appeared and answered, admitting execution of a proposal for the WPA project described in plaintiff's complaint, and alleges that the application therefor contained the following: "This project is intended for the use or benefit of the public". It further alleges that after the project had come under way it was "mutually agreed and understood between the Works Progress Administration officials in charge, and the City of Columbus, that the building would be constructed so as to be suitable for use as a municipal liquor store, and said building was so constructed and finished." Thereafter are allegations with reference to a written contract between the City of Columbus and E. E. Hunstad concerning the operation of a liquor store "as and for and on behalf of said city and for and in consideration of profits accruing thru said business, over and above $100.00 per month, as and for his compensation, and that during said period, the city of Columbus earned in the conduct of its said liquor store, the sum of $100.00 per month, which said sums were garnered into and paid into the City Treasury for the benefit of the public, and all citizens, residents and taxpayers thereof, and that the said public received all the benefits accruing therefrom." There are further allegations in defendant's answer with reference to the renewal of the agreement with Hunstad, and that certain administrative officials of the Works Progress Administration had raised question with reference to the use of the property as a municipal liquor store, and defendant's inability to cancel its agreement with Hunstad until the expiration of the term provided for therein. There are further allegations with reference to the defendant's intentions not to violate any law, and that the property "is used for a public purpose, towit: a Municipal liquor store, returning beneficial income to the citizens of Columbus and to the taxpayers of that city." There are other allegations regarding a change of plans during the construction of the building, such change of plans being with the knowledge and consent of the Works Progress Administration officials. The change of plans was necessitated in order to accommodate a municipal liquor store, which it is alleged was of benefit to the defendant. Numerous additional allegations appear in the defendant's answer, but need not be referred to herein.

After joinder of issue the plaintiff moved to strike all of the allegations contained in paragraphs three to fourteen, inclusive, of the defendant's answer on the ground "that the same are redundant, immaterial, incompetent and impertinent," and "for judgment on the pleadings in said action upon the ground and for the reason that the Answer served and filed in said action is sham and frivolous and in no way states any defense in law."

Hearing on the plaintiff's motion to strike was had and arguments were presented to the Court by counsel for both parties. Thereafter each counsel submitted to the Court a brief in support of his position. In the defendant's brief counsel states: "We therefore respectfully submit that the Motion should be denied, and as suggested heretofore in this Brief, that the action itself should be dismissed. * * *"

The situation thus presented is that each party has moved for judgment on the pleadings and has argued and briefed the merits of the controversy rather than being confined solely to the question of pleadings.

A review of plaintiff's complaint indicates that by virtue of the Federal Emergency Relief Appropriation Act of 1937, 15 U.S.C.A. §§ 721–728, the United States of America agreed with the City of Columbus for the erection of a certain project described as: "Demolishing old building and Construction of the Community Recreation Building"; that the project was properly approved, and that "the project herein alleged was by this Plaintiff in all things performed and completed on January 31, 1939, in the total cost of materials and labor in the sum of $3,729.90". The complaint alleges that the defendant "did convert the project herein * * * in that the said Defendant leased same to a private individual for the operation of a liquor store, and by reason thereof, the Plaintiff herein is entitled to recover from the Defendant herein, the sum of $3,729.90, the amount expended by this Plaintiff for the project herein described". In effect plaintiff contends that all projects constructed by or through the authority of the Federal Emergency Relief Appropriation Act of 1937 shall be or are impressed with an easement or a restriction limiting the use

of such completed projects to the uses described in the Act, and that a local municipality, incidentally benefited by the Federal Emergency Relief Appropriation Act of 1937, could use the project thus created only for the purposes set forth therein.

■ It seems to me essential, in order to determine whether or not plaintiff's complaint states a cause of action upon which relief could be granted, that examination be made of the Act in question and its purposes ascertained. The evident and declared policy of Congress in passing the various Emergency Relief Acts was that of reducing and relieving unemployment. The joint resolution of June 29, 1937, c. 401, 50 U.S.Stat. 352, 15 U.S.C.A. §§ 721–728, begins by stating:

"That in order to continue to provide relief, and work relief on useful public projects, * * * there is hereby appropriated, * * * (money) to be used in the discretion and under the direction of the President, * * * and no non-Federal project shall be undertaken or prosecuted under this appropriation unless and until the sponsor has made a written agreement to finance such part of the entire cost thereof as is not to be supplied from Federal funds."

Numerous courts have had opportunity to define the purposes of the various Federal Emergency Relief Acts:

" 'Courts have judicially noticed the fact that the primary objective of the Federal Emergency Relief Appropriation Act of 1935 (15 U.S.C.A. § 728 note) was not to benefit particular municipalities or localities, but to provide relief for unemployment. By contributing a small part of the necessary expense and by contributing the services of a superintendent and a small number of employees the City of Los Angeles was able to obtain the benefit of the project. It was not, however, city work of which the city had control, but was under the rules and regulations of the Emergency Relief Administration. Hoover v. Independent School Dist., supra [220 Iowa 1364, 264 N.W. 611]; Shelton v. City of Greeneville, 169 Tenn. 366, 87 S.W.2d 1016; Todaro v. City of Shreveport, supra [La.App., 170 So. 356, 360].' " Taylor et al. v. City of Los Angeles, 29 Cal.App.2d 181, 84 P.2d 242, 243.

"We are dealing here with emergency measures which represent the exercise of police power and have for their purpose the relief of persons in distress by reason of the financial and economic depression. *Their primary purpose is to furnish work to the unemployed. The question of making public improvements is secondary; and is but a means of carrying out the primary purpose.*" (Emphasis supplied.) Village of Larchmont et al. v. Town of Mamaroneck et al., 249 App.Div. 741, 291 N.Y.S. 716, 718.

"The sole and primary purpose of the various Emergency Relief Appropriation Acts and the Executive Orders of the President made in connection therewith, is to give employment to persons requiring relief, and involves a 'work relief program.' " Block v. Sassaman, D.C., 26 F.Supp. 105, 106.

The Supreme Court of Massachusetts had occasion to pass upon the purpose of the various Emergency Relief Acts. In doing so that Court stated:

"Running through all the laws enacted, the purpose of the Federal government is found to be to relieve unemployment directly, through projects, so called. The plan of employment involved the doing by the government itself of these projects, which, as in the case at bar, theretofore were carried on by the municipalities themselves with some possible assistance from the Commonwealth and county. But we view these projects as undertaken not for the benefit of the municipality, but primarily for the purpose of relieving unemployment, and incidentally for the utility and convenience of the general public, as distinguished from the municipality itself." Benoit v. Hathaway, 1941, 310 Mass. 362, 38 N.E.2d 329, 331.

■ It is apparent from plaintiff's complaint that " * * * the project herein alleged was *by this Plaintiff in all things performed and completed* on January 31, 1939 * * *." We are, then, confronted with the question of what control the United States of America could exercise over the project after its completion. It is apparent that the primary purpose of the Federal Emergency Relief Appropriation Acts had been accomplished when the project was completed. Unemployment had been lessened; relief in the way of public work had been granted. The United States had paid those properly certified as needing relief for such work as they performed on the

project, which, according to the complaint, *the plaintiff itself completed*. The money was not paid by the United States to the City of Columbus. The City of Columbus, by having a completed building in place of an old and inadequate one, was incidentally benefited. But the purpose of the Act was not to benefit the City of Columbus, nor to erect a community building for the City of Columbus. The primary purpose, as stated, was to relieve unemployment, and when the project was completed that purpose had been served. Nowhere in the Act do we find any authority or justification for the theory that projects thus completed may be *used* only for the purposes designated in the Act. If the contrary were true, and if the Government's theory were sound, then the Federal government could exercise control over the many thousands of non-Federal projects created out of WPA labor. That control would not be for any limited time, but theoretically would be forever, or at least until such projects were no longer susceptible of any practical use. The public ball park of a municipality would forever remain a public ball park unless the Federal government (provided even it had the authority under the theory advanced) consented to its being used for other purposes. Congress intended no such control over the incidental benefits of the relief program, and I find no justification for such theory in the Acts involved. It is quite true that Congress, in its appropriations, limited the projects upon which such appropriations could be expended. Had the City of Columbus asked for the approval of a project creating a privately operated apartment house, the project would not, of course, have received departmental or executive approval. But once a project, which in its application meets the specifications required by law, and receives approval, and is constructed under the supervision and control of WPA officials, is completed and turned over to the municipality, it is turned over without being impressed with an easement or right or restriction controlled by the United States, and may be used thereafter by the municipality in any manner which the laws governing that municipality allow. A contrary conclusion would, in my opinion, result in entanglements of such infinite complication as to be impossible of administration, judicial or otherwise, and was never within the contemplation of Congress.

It is true that the plaintiff's complaint alleges that the defendant agreed that "The work proposed will be done in full conformance with all legal requirements," and also that "All operations will be in accordance with regulations prescribed under the Emergency Relief Appropriation Act of 1937, and orders and regulations issued there-under", and that Section 8 of Operating Procedure G–1, issued by the Works Progress Administration, provided that "Projects must be genuinely useful to the public" and "Projects shall not be undertaken for the benefit of private * * * individuals * * *", and that " * * * improvements may be made only to public property * * *, which property is held either for the conduct of normal governmental function or for the general use of the public."

It will be observed, however, that nowhere in the complaint is it alleged that the defendant had any control over the construction of the project, nor is it alleged that in the actual construction there was any deviation from the bare provisions of the law, nor from the regulations which were duly issued by proper authority thereunder. The United States, plaintiff herein, through its officials and its agents, had full control of the construction and completion of the project sponsored by the City of Columbus. The type of project or proposal, as alleged in the complaint, was a proper one, and the complaint alleges that the plaintiff "in all things performed and completed" the project. Nowhere in the complaint is there an allegation to the effect that the defendant agreed that *after* the completion of the project the same would be used in any specified manner or for any particular purpose or purposes. There has been alleged no fraud on the part of the defendant. The complaint merely alleges that the defendant "converted" the project, that is, "the community recreation building", by leasing the same to a private individual for the operation of a liquor store. The answer, incidentally, denies that the defendant leased the building to another for the operation of a liquor store, but asserts that it operates a municipal liquor store therein and has a contract of employment with the one who manages it. There may be some question whether, under the laws of the State of North Dakota, the City of Columbus could itself operate a municipal liquor store. But, with such

questions the United States has no concern. The interest of the United States in the project ceased when the primary purposes of the Act had been served through giving work relief, by completion of the project, and its release to the defendant.

For the reasons stated I am of the opinion that the complaint fails to state a cause of action and the case will be ordered dismissed.