**LAKEVILLE (Village), Plaintiff, v. CONNEAUT (City) et, Defendants.**

Common Pleas Court, Ashtabula County.

No. 44362.   Decided November 30, 1956.

Ray Bolinger, Village Solicitor, Lakeville, Nazor & Nazor, Howard M. Nazor, of Counsel, Ashtabula, Peck, Shaffer & Williams, John W. Peck, of Counsel, Cincinnati, for plaintiff.

Jack Stolson, City Solicitor, Conneaut, Squire, Sanders & Dempsey, Henry J. Crawford, George I. Meisel, of Counsel, Cleveland, for defendant, City of Conneaut.

(McLAIN, J, of Trumbull County, sitting by designation in Ashtabula County.)

## OPINION

By McCLAIN, J.

The Village of Lakeville and the City of Conneaut are contiguous municipal corporations in Ashtabula County, Ohio.

This action is brought by the Village of Lakeville against the City of Conneaut and the Conneaut Banking and Trust Company, Trustee for holders of bonds of the Conneaut Municipal Water Works, and a declaratory judgment is sought defining the respective rights of the plaintiff and the defendant in the use and ownership of certain water mains, lines, and hydrants in the Village of Lakeville and also asks that the said Village of Lakeville be adjudged to be the owner of said mains, lines, and hydrants.

It further appears that the Village of Lakeville, by a vote of the people, has authorized the construction and operation of a water works system for the Village, and that funds for such purpose have been duly authorized.

It is further alleged that the plaintiff, the Village of Lakeville, intends to use the mains and lines as part of its own water works system, but that the ownership of these mains and lines must be judicially determined prior to the issuance of bonds to finance the construction of the utility.

It is admitted, in the answer filed by the City of Conneaut, that a controversy exists as to the ownership of the water lines and mains existing in the Village of Lakeville. In its cross-petition, it is alleged that the water mains and lines located in the Village of Lakeville have been there from periods of approximately 15 to 40 years; that the lines are an integral part of the Conneaut Water Works System, and that the City of Conneaut owns these mains and lines and has the right and intends to continue to use, operate, and maintain them as a part of the water works system of the City of Conneaut and, further, that these water mains and lines have been pledged to secure the payment of bonds of the City of Conneaut for the purpose of extending and improving its water works system.

The defendant, the City of Conneaut, also alleges that a controversy has arisen between the municipalities in respect to ownership and a right to use and operate and maintain the water lines and mains in Lakeville Village, and that a judgment declaring the rights, status, and other relations of the parties hereto in regard to said water lines and mains will terminate the controversy between them and remove the uncertainty and confusion now existing with respect to the ownership, right to use, operate, and maintain said water mains and lines, and the defendant, City of Conneaut, in effect, joins in the prayer for a declaratory judgment.

It appears from the evidence that some of the lines were constructed by private individuals; others by the Conneaut Water Company, and still others by the City of Conneaut with the assistance of the United States Government through W. P. A. and other work relief projects.

It should be stated at the outset that the issues in this case cannot be entirely resolved by a resort to precedent. While there is unquestioned desirability of abiding by antecedent principles, and every controversy should be subjected to scrutiny of the facts at hand, and if the solution can be welded to former adjudications, so be it.

At the same time, it must be recognized that the underlying strength in the pattern of the great body of common law is in its particularized fabric. If distinctions, differentiations, or exceptions are in sound reason indicated, under particular circumstances, upon such considerations is the law itself builded and true justice attained.

The first question to be disposed of is whether or not there is a justiciable controversy between the parties hereto giving this Court jurisdiction to render a declaratory judgment.

It is the contention of the defendant that there is no controversy regarding the lines installed by private individuals; that those who installed them are not parties to this action, and that no declaratory judgment should be rendered in respect to these lines.

It is further urged that no controversy likewise exists as to the lines constructed by the Conneaut Water Company and, if there is, this company is not a party to the proceeding and likewise that no controversy is shown regarding the ownership of the water lines constructed by the City of Conneaut with the financial assistance of the United States Government.

It is further the position of the defendant that a justiciable controversy is a prerequisite for jurisdiction of the Court in a declaratory judgment action, and that jurisdiction cannot be conferred by consent of the parties.

While it is true, as a fundamental proposition, that the existence of a justiciable controversy is a pre-requisite for invoking jurisdiction of a Court in a declaratory judgment and cannot be conferred by consent of the parties (1 Anderson, Declaratory Judgments, 65), and that litigants cannot confer jurisdiction on the Court (Miller v. Miller, 154 Oh St 530), it appears that the theory upon which this rule is based is that mere general contentions between parties which have not formulated themselves into a definite and concrete controversy should not warrant a Court in giving declaratory relief.

However, there seems to be authority for the proposition that the general rule requiring a justiciable controversy is relaxed where public interest is involved. Anderson, Declaratory Judgments, Vol. 3 (2d), par. 63. Vonherberg v. City of Seattle, 20 Fed. (2d) 247. State v. Board of Education, 52 Pac (2d) 141, Supreme Court of Idaho.

Although the Court has been unable to find any precedent in Ohio in which the general rule has been relaxed by virtue of great public interest, it seems that the soundness of such a rule is beyond question and should be incorporated in the jurisprudence of this state.

There is also some authority to the effect that, by virtue of the admission by the defendant that a controversy exists and its prayer for affirmative relief seeking a declaratory judgment in its cross-petition, it is, therefore, prevented from denying the existence of a justiciable controversy. See Anderson on Declaratory Judgment (2d Ed.) Vol 1, par. 315. Progressive Party v. Flynn, 400 Ill. 102 (Supreme Court of Illinois 1948); 79 N. E. (2d) 516.

Syllabus 4:

"The filing of a counterclaim by defendants in declaratory judgment action, asking for a declaration of defendants' rights on some statute involved in plaintiffs' application, was an admission by defendants that an actual controversy was involved as required by act dealing with declaratory judgments."

There is a further compelling reason for the adoption of the foregoing proposition of law. There is a clearly evinced legislative intent found in the statutes of this state that the declaratory judgment act be liberally construed.

"Sec. 2721.13 R. C. Construction.

"Secs. 2721.01 to 2721.15, inclusive, R. C., are remedial, and shall be liberally construed and administered."

"Sec. 2721.14 R. C. Interpretation.

"Secs. 2721.01 to 2721.15, inclusive, R. C., shall be so interpreted and construed as to effectuate their general purpose to make the law of this state uniform with the law of those states which enact similar sections, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees."

Judicial recognition of this fact is also found in Coshocton Real Estate Co., Appellee, v. Smith et al, Appellants, 147 Oh St 45.

Where the facts indicate an issue to be to some extent potential and anticipatory but at the same time both vivid and imminent, it cannot be said to be non-existent to the extent that a Court is unable to apply the transquilizing effect of a declaratory judgment especially where public health and safety demand a barrier against its recrudescence.

Under the circumstances existing in this case wherein the Village of Lakeville is about to construct a water works, and the City of Conneaut is now furnishing water to part of the Village through the water lines and mains in question, it would appear that it would be vitally necessary and proper that a judicial determination be made of the ownership of these lines as between the two political subdivisions.

In discussing the evidence, it should be pointed out that the contention of the plaintiff, the Village of Lakeville, is chiefly of a negative character.

In the plaintiff's brief, under the title, "Ownership of Water Mains and Lines within the Corporate Limits of the plaintiff, the Village of Lakeville," it is stated as follows:

"It is respectfully submitted that there is no ownership in the defendant, the City of Conneaut, in any of the water mains or lines within the corporate limits of the plaintiff, the Village of Lakeville."

Almost the entire written and oral arguments advanced by the plaintiff are to the effect that the City of Conneaut has no ownership. Nothing can be found therein advocating the ownership of the Village of Lakeville save and except, perhaps, that it is stated the water lines are in the streets of that village.

It is claimed by the Village of Lakeville that the City of Conneaut does not own the water lines constructed by the Conneaut Water Company for the reason that in the warranty deed from the company to the City of Conneaut in 1921, the assets conveyed are described as of the Conneaut Water Company in the City of Conneaut. It appears that this contention is not well founded for a number of reasons.

The original franchise given the Conneaut Water Company in 1910 contains an option in favor of the City of Conneaut to purchase all of the company as a unit. Subsequent ordinances authorizing the purchase of the plant have an indicated purpose of buying all the real and personal property owned by the Conneaut Water Company.

The minutes of the meeting of the Board of Directors and shareholders of the Conneaut Water Company indicate a clear intention to convey to the City of Conneaut all assets except certain exclusions which do not include these water mains. This conclusion is further strengthened by the same minutes in which the officers were instructed to take such legal action as might be necessary to wind up the affairs of the company following the completion of the sale of its plant and property to the City of Conneaut.

To say that the company did not intend to convey all its assets to the City of Conneaut would be attributing irrational and absurd corporate action to the Conneaut Water Company which is entirely unwarranted by the evidence.

The Court, therefore, is of the opinion that the language used in the deed was merely for the purpose of identifying the seller and cannot reasonably be construed as a limitation on the assets disposed of by the company.

Subsequent to the purchase, the city has exercised continuous possession, control, and maintenance over these particular lines.

Even naked possession, which is the lowest and most imperfect degree of title, is good against anyone not having a better title. It is an indicia ownership, and there is a rebuttable presumption that one in possession of the property is rightly in possession. **Mielke et al, Appellants v. Leeberson, Appellee, 150 Oh St 533.**

Possession, particularly for a long period of time, raises a prima facie presumption of ownership. **32 O. Jur. 637; 42 A. J. 218; Oklahoma Railway Co. v. The City of Guthrie, 52 Pac. (2d) 18.**

While a perfect title might entail the possessor having all the incidents of ownership, a perfectly legal title may result from less under particular circumstances, and the unchallenged possession and control of personal property is sufficient in the absence of any evidence to the contrary, especially when the record is devoid of any use, control over, or possession, or any other evidence of ownership in another, and when the evidence so clearly shows no tortious acquisition by the City of Conneaut depriving any lawful owner of the title.

In view of the foregoing, the Court is of the opinion that the City of Conneaut is the owner of the water lines constructed in Lakeville Township, now Lakeville Village, by the Conneaut Water Company.

The second problem to be met is the ownership of lines constructed by the City of Conneaut with the financial assistance of the United States Government. In this category, there are two major water mains, and a relocation and replacement by the city within the Village of Lakeville.

The Lake Road main was a C. W. A. Project with the City of Conneaut, as a sponsoring agency, paying material costs in the sum of $9,557.00, and the C. W. A. the sum of $2,303.16.

The main on U. S. Route 20 west, is partly in the City of Conneaut, by virtue of annexation, and a part still in the Village. This was a W. P. A. Project with the city acting as the sponsoring agency.

The main on U. S. Route 20 east, was also a W. P. A. Project in which the city obligated itself to pay 80% of the cost of all materials and under which the city furnished the majority of the pipe installed, and the W. P. A. the balance.

These facts are recited for the purpose of establishing the fact that the City of Conneaut made very substantial contributions to these projects.

It was the declared intent and purpose of the Congress of the United States, in passing various emergency relief acts, to reduce and relieve unemployment. See Joint Resolution of June 29, 1937 c. 401; 50 U. S. Statutes, 352; 15 U. S. C. A. Sections 721-728; Title 45, C. F. R., Public Welfare, Chapter III, Section 391.21.

Since it was the primary purpose of these relief acts to furnish work to the unemployed, the construction of improvements, such as water

lines, was secondary and but a means of carrying out the primary purpose.

For the reason that this exercise of police power by the Federal Government was not for the purpose of providing any direct benefit to Lakeville Township, but rather for the purpose of relieving unemployment in the area, the ownership of these water lines must be declared, after the completed installation, the property of the sponsoring agency, that is, the City of Conneaut, Ohio. See United States v. City of Columbus, 54 F. Supp. 37.

The third question, as to the ownership of privately constructed lines, presents a more difficult problem. The Court is of the opinion that if it could rationally be done, the ownership of these lines should be determined in this controversy.

However, any suggestion that persons could be bound by a judgment in a proceeding to which they were not parties, would encounter constitutional objection. Legal interest is a criterion of joinder as a necessary party.

The Supreme Court of the United States has defined an indispensable party as one who not only has an interest in the controversy, but an interest of such a nature that a final decree cannot be made without affecting that interest. Shields v. Barrow, 17 Howard 130, 136 (1854).

Sec. 2721.12 R. C., provides as follows:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration. No declaration shall prejudice the rights of persons not parties to the proceeding. * * *"

While it is an elementary principle of law that possession is prima facie evidence of title, the fact that these lines were constructed by private individuals is a fact which, in itself, is sufficient to rebut the prima facie presumption.

. This case would be eminently suitable for the application of a rule which would give the Court the right, without the application of either party, to order the names of any persons who ought to have been joined, or whose presence before the Court may be necessary in order to enable the Court effectually and completely to adjudicate upon and settle all the questions involved in the cause, be added as either plaintiff or defendant.

This is the modern way for enforcing the sound principle that the Court should make the performance of the judgment perfectly safe for all concerned and prevent the chance of further litigation. Such a provision exists in some jurisdictions, and its desirability is well pointed out in the case of Victoria v. Commonwealth, 39 C. L. R. 399. In the High Court of Australia.

Since this procedure, under the declaratory judgment act, is entirely statutory, in the absence of such a provision in the Ohio statutes, the Court is powerless to add additional parties in this case and is, therefore, unable to determine the ownership of the lines in question which were installed by private individuals.

In the interest of clarity, it should be added that in instances where lines were privately constructed, and later relocated by the Conneaut

City Water Works, a finding is hereby made that the title, in such instances, is in the City of Conneaut.

The remaining question to be determined is the franchise rights of the City of Conneaut to control, maintain, and operate the present water lines within the Village of Lakeville. That a justiciable controversy exists in this case, in respect to this question, has been challenged.

An examination of the authorities shows a wide variety of precedent. See Corpus Juris Secundum, Vol. 37, page 164; also Corpus Juris Secundum, Vol. 31, Sections 138-147.

A labored analysis of these decisions would be of little purpose. Suffice it to say that a recondite consideration of the issue dispels the perfunctory conclusion that there exists essential diversity of thought. These cases merely reveal the elasticity and accommodating virtue of the law and lead to the manifest conclusion that they are based on a recognition of an old axiom, "The supreme law is the welfare of the people." As a result, under varied factual situations, the sovereignty of the state and its subdivisions has been infringed upon to some extent in applying estoppel.

Some of the cases seem to draw a distinction in this regard between governmental and proprietary functions. Even in such cases, the differences seem to be more factual than basic. At least there is ample authority wherein proprietary functions are affected by estoppel. See Corpus Juris Secundum, Vol. 31, page 416, and the cases cited therein.

The Supreme Court of Ohio has, at least in one instance, recognized the doctrine that equitable estoppel may be asserted against a municipal corporation. **City of Mt. Vernon v. State, 71 Oh St 428 (1905).** It would also seem that the rule would be more compelled when both parties are political subdivisions.

It would perhaps be well to consider the plaintiff's position that no franchise rights exist and the reasons advanced.

A municipality in Ohio is granted express and self-executing authority by the constitution to sell and deliver to others outside the municipality the surplus product of any utility. **Article XVIII, Section 6.**

A franchise was granted in 1909 to the Conneaut Water Company, the pertinent part of which reads as follows:

"SECTION I: THAT, THE CONNEAUT WATER COMPANY, its successors or assigns, is hereby granted the right for and during the term of twenty years from the date of this agreement to maintain and operate water works in that part of the Township of Conneaut or any village or city which may hereafter be created by organization, consolidation or otherwise, to supply such township and the inhabitants thereof in said vicinity with water for public and private purposes, and to use within the present or future limits of such township the streets, roads, alleys and other public ways for the purpose of laying, taking up and repairing mains, pipes, hydrants and other appurtenances."

Although the express franchise expired in 1929, the City of Conneaut, successor to the Conneaut Water Works, has continued to furnish water to what was formerly the township, and now the Village of Lakeville, through water lines in the village and undertaken new construction and relocations uninterruptedly for a period of 35 years.

That the township and village has given tacit recognition to the continuance of this franchise is shown by the fact that the village has paid to the city water hydrant rentals and executed new rate schedules, and the latest contract entered into in 1937 between the City of Conneaut and the township is, at the present time, still in effect.

At no time has the township or village taken any action indicating a disavowal of its intention to recognize an indefinite continuance of the franchise rights of the City of Conneaut. Part of the residents of the Village of Lakeville are dependent upon the service furnished by the City of Conneaut, and any peremptory severance of this service and the resulting loss of water supply would indeed be catastrophic to those residents of Lakeville depending upon this service.

A number of cases have been cited by the plaintiff in support of its contention that a continuing franchise does not exist. It has been decided that these cases, dealing with problems of ouster under various circumstances, are unauthoritative in respect to the facts existing in this case.

The plaintiff also offers Ellis Ohio Municipal Code, page 39, Sec. 1.55, in which the following language is used on page 40:

"Following the reasoning in the Indian Hill Acres Case, the Court of Appeals for Hamilton County has, in several unreported decisions, ruled that a municipality may discontinue water service to consumers in areas outside of the municipality with or without cause, if there is no contract for service."

Upon an examination of **State, ex rel., Indian Hill Acres v. Kellogg, City Manager, 149 Oh St 461,** this conclusion of the author cannot be justified. This case involved the obligation of a municipal utility to extend its lines outside of the municipality rather than to continue service to an area already served.

There is ample authority supporting the proposition that where a public utility continues to furnish service after the expiration of its express franchise, and its services are accepted, that there is an assumed quasi public service requiring it to continue to supply adequate service within its reasonable capacity to do so, and that there continues an implied contract between the parties.

12 McQuillin, Municipal Corporations, 178; Iowa City v. Iowa City Light and Power Company, 90 Fed. (2d) 679; Denver v. Denver Union Water Company, 246 U. S. 178; Hill v. Elizabeth City, 298 Fed. 67; Pittsburgh v. Cochrane, 159 Pac. (2d) 534.

The underlying necessity of requiring municipal corporations, when operating water lines beyond its corporate limits where necessary for service, accommodation, and convenience of the public, has received legislative recognition in some states. See Purdon's Statutes (Penna.) Vol. 53, Sec. 12198-3531 (as amended 1951), in which such extra-territorial service has been subject to regulation and contral by the Public Service Commission.

Applying the consequences of the foregoing observations to the situation here existing, wherein the public weal speaks so loudly in favor of the invocation of equitable estoppel, the Court finds that the City of

Conneaut has acquired a franchise of indefinite duration to use, operate, and control the water lines owned by it in the Village of Lakeville; that the City of Conneaut is obliged to continue to serve the residents of the Village of Lakeville for an indefinite period having due regard for its capacity to do so, and that the franchise herein defined is not terminable at will by either the City of Conneaut or the Village of Lakeville but only upon reasonable notice by either municipality and at such time and under such circumstances as may be consistent with the duty both owe to the residents of the affected area.

Counsel may prepare a journal entry in accordance with the foregoing.