The People of the State of Illinois ex rel. Russ Alford, Appellee, v. Lew A. Hendee et al., Appellants.

Gen. No. 8,920.

Opinion filed March 22, 1935. Rehearing denied April 22, 1935.

RUNYARD & BEHANNA, of Waukegan, for appellants; EUGENE M. RUNYARD and DANIEL J. DALZIEL, of Waukegan, of counsel.

JEROME F. DIXON and EDWARDS, BLOCK & BAIRSTOW, of Waukegan, for appellee; J. E. BAIRSTOW, of counsel.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

Russ Alford, of the City of Waukegan, Illinois, filed his petition in the circuit court of Lake county for a writ of mandamus against Lew A. Hendee, Michael

Haney, and Henry F. Wallenwein, to compel them as the canvassing board for the election held November 6, 1934, to properly abstract the votes in certain precincts of Lake county. The petition in substance is as follows:

It alleges relator is a resident, a qualified voter and taxpayer of Lake county, Illinois; that there was a general election held on November 6, 1934, at which time was submitted to the voters of Lake county, Illinois, an election of certain county offices including the office of county clerk; that the relator was a duly nominated candidate on the Democratic ticket for said office of county clerk of Lake county, Illinois, opposing Lew Hendee, Republican candidate; that the relator is duly qualified to hold such office; that the county of Lake contains 75 election precincts duly designated by the board of supervisors; that according to the proclamation of the judges and as shown by the poll books and tally sheets duly certified and authenticated from the said precincts there was cast for the relator 18,729 votes for said office and for the respondent, Lew Hendee, 18,451 votes for said office, provided all the votes so proclaimed by the judges and shown by the poll books, tally sheets and certificates to have been cast for each candidate, are counted as proclaimed and as certified.

That on the 7th day of November, 1934, all of the returns from each of the aforesaid precincts were delivered to respondent Lew A. Hendee, the present county clerk of Lake county, Illinois, pursuant to statute; that on such day said respondent Lew A. Hendee in such capacity called to his assistance Michael J. Haney and Henry Wallenwein, both duly elected, qualified and acting justices of the peace for the town of Waukegan, county of Lake and State of Illinois; that they then and there in the office of the county clerk proceeded to open returns and make abstracts of the votes cast for the different offices voted for at said

election; that immediately upon the closing of the polls the judges of election in the 2nd precinct of the town of Deerfield in Lake county, Illinois, proceeded to canvass the votes there polled and to proclaim the total number of votes for the office of county clerk, as follows:

|  | Straight tickets | Number of votes received on ballots other than straight tickets. | Total |
|---|---|---|---|
| Russ Alford | 309 | 36 | 345 |
| Lew A. Hendee | 115 | 90 | 205 |

and they delivered said returns to the county clerk of Lake county, Illinois; that immediately on closing the polls the judges of election in the 2nd precinct of the town of Avon in Lake county, Illinois, proceeded to canvass the votes there polled and to proclaim the total number of votes for the office of county clerk as follows:

|  | Straight tickets | Number of votes received on ballots other than straight tickets. | Total |
|---|---|---|---|
| Russ Alford | 149 | 105 | 254 |
| Lew A. Hendee | 139 | 62 | 201 |

That in the aforesaid 2nd precinct in the town of Deerfield 619 electors voted at said election; that in aforesaid 2nd precinct in the town of Avon, Lake county, Illinois, 483 electors voted at said election; that upon the abstracting and canvassing of the returns from the 2nd precinct of the Town of Deerfield, said Lew A. Hendee, Michael J. Haney, and Henry Wallenwein determined that each Democratic candidate for office in the aforesaid precinct except the relator received 309 straight votes on the Democratic ticket.

That the said persons composing the canvassing board in abstracting the vote for the office of county

clerk, fraudulently neglected, failed and refused to abstract the full number of straight Democratic ballots for the relator for said office and arbitrarily and illegally abstracted for the relator 115 straight tickets which was the number of straight Republican tickets or ballots cast in the aforesaid precinct, thereby depriving the relator of 194 votes; that the relator demanded of said canvassing board that this mistake be corrected; that affidavits and proofs were submitted to them; that said canvassing board by a vote of two to one refused the relator's demand and declared an abstract of the vote as follows:

|  | Straight tickets | Number of votes received on ballots other than straight tickets. | Total |
|---|---|---|---|
| Russ Alford | 115 | 36 | 151 |
| Lew A. Hendee | 115 | 90 | 205 |

That through this mistaken error the electors who had voted for the relator for said office were deprived of their franchise.

That upon the abstracting and canvassing of the returns from the 2nd precinct of the town of Avon said Lew A. Hendee, Michael J. Haney, and Henry Wallenwein, in which precinct only 483 votes were polled and cast, erroneously and fraudulently credited Lew A. Hendee, the Republican candidate for county clerk, with more than 100 votes than he had received in the aforesaid precinct, by abstracting the number of votes received upon ballots other than straight tickets for the said Lew A. Hendee as 162 instead of 62, as follows:

|  | Straight tickets | Number of votes received on ballots other than straight tickets. | Total |
|---|---|---|---|
| Russ Alford | 149 | 105 | 254 |
| Lew A. Hendee | 139 | 162 | 301 |

thereby recording a total of 555 votes polled and cast in said precinct for said office, a greater number of votes than the number of votes which were cast in said precinct at said election which was 483; that relator demanded this error be rectified and amended; that affidavits and proofs were submitted to said canvassing board; that the said canvassing board refused to accept the proofs and failed to correct and rectify this error thereby giving said Lew A. Hendee, Republican candidate, 100 more votes than were cast for him at said election in direct contradiction of the returns of the judges of said precinct; that the fraudulent, arbitrary, erroneous and unlawful recording and abstracting of the votes as aforesaid in the above two precincts will deprive the relator of the certificate of election to which he is entitled and unless amended and corrected to speak the truth would give the following as the total vote cast for said office:

|  | Total vote |
| --- | --- |
| Russ Alford | 18,535 |
| Lew A. Hendee | 18,551 |

That based on this erroneous and fraudulent abstract of the vote polled said Lew A. Hendee would be awarded the certificate of election to which he is not entitled; that if the returns of the two precincts are correctly and properly abstracted and canvassed final totals will be as follows:

|  | Total vote |
| --- | --- |
| Russ Alford | 18,729 |
| Lew A. Hendee | 18,451 |

That the relator is entitled to the certificate of election.

That the said county clerk, Lew A. Hendee, and the two justices, Henry F. Wallenwein and Michael J. Haney, have not completed the abstracting and canvassing of the votes and ballots and still remain in session and have not adjourned, and the errors and

mistakes may be still corrected by them; that according to the proclamation of the judges in the precincts which still remain to be canvassed and according to tally sheets and poll books duly certified and authenticated in said few remaining precincts, they would not change the aforesaid grand totals of the votes in the last preceding paragraph above; that the relator has demanded that a certificate of election to the office of county clerk, Lake county, Illinois, be issued to him which the said Lew A. Hendee has refused to make out and deliver, whereby relator is prevented from receiving such certificate to which he is justly and lawfully entitled.

Wherefore, relator prays for writ of mandamus, directed to the said Lew A. Hendee, county clerk of Lake county, Illinois, and to Michael J. Haney and Henry F. Wallenwein, justices of the peace of Lake county, Illinois, as aforesaid, to show cause why a peremptory writ of mandamus should not be awarded requiring them to correctly and properly abstract the votes in the aforesaid precinct to speak the truth and to enter the votes so cast in the 2nd precinct in the town of Deerfield, Lake county, Illinois, to show that the relator received 309 straight Democratic votes in that precinct and a total of 345 votes in the said precinct, and to show that Lew A. Hendee received 62 votes upon ballots other than straight tickets in the 2nd precinct in the town of Avon in Lake county, Illinois, and a total in the said precinct of 201 votes; and the relator prays for a writ of mandamus to the said Lew A. Hendee, county clerk of Lake county, Illinois, requiring him to show cause why a peremptory writ of mandamus should not be issued to compel him to certify the election of relator as county clerk, and make out a certificate of the election of the relator to the office of the county clerk and deliver such certificate to the relator, and that such other

order may be made as justice requires. The petition is sworn to.

Summons was issued returnable November 21, 1934, which was served on all three members of the canvassing board on the 15th day of November, 1934. On the 16th day of November, 1934, the respondents entered their special appearances in court and filed a plea to the jurisdiction thereof. To this plea the relator demurred and the court sustained the demurrer. On the 23rd day of November, 1934, the respondent Hendee filed his answer to the application for mandamus. He denies that Russ Alford received 18,729 votes, or that Lew Hendee received only 18,451 votes, but averred that Hendee received the highest number of votes cast for the office of county clerk of said county. He also declares that the board had properly canvassed the votes in the precincts mentioned, and that the respondent had received the highest number of votes for the office of county clerk and was duly elected. He denied that the board had acted illegally, erroneously, arbitrarily, or fraudulently in canvassing the results and in abstracting the vote at such election. The answer further sets forth that the respondent Hendee and Haney and Wallenwein (the latter two men justices) who composed the canvassing board had fully completed the canvass and abstract of results of the election and fully performed all their duties as such board; that all the votes had been abstracted from all of the precincts in said Lake county; that the candidates receiving the largest number of votes had been ascertained; that the result had been certified to the county clerk, and had been proclaimed, and that their duties had been fully completed and they had adjourned *sine die* on November 16, 1934. Said answer further states that all of the functions and duties of the board of canvassers had been performed prior to the return day to answer, and that said respondent Hendee had been declared, proclaimed, and certified

as the successful candidate for county clerk; that said board had no other duties to perform and had adjourned on the 16th day of November, 1934. The answer denied that the court had any authority or jurisdiction to order the respondent Hendee and the said two justices of the peace to reconvene the canvassing board and recanvass any or all votes cast at said election, or that the court had the power, authority, or jurisdiction to grant a writ of mandamus as prayed for. To this answer the relator replied, traversing and denying all of the allegations and averments contained in the answer.

The original poll books and tally sheets of the two precincts in Lake county, over which this controversy arose, were certified to this court for examination. Those exhibits disclosed that in the second precinct in the town of Avon, in Lake county, Lew Hendee had received 201 votes and Russ Alford 254 votes, of which there were 139 straight Republican votes cast and 149 straight Democratic votes cast; that by the poll books and tally sheets of the second precinct of the town of Deerfield, Lew Hendee had received 205 votes, and Russ Alford had received 345 votes; of these votes cast 115 were straight Republican votes, and 309 straight Democratic votes. On the tally sheet of the second precinct of Deerfield township the names of the Republican candidates appear first, and then the Democrat. Opposite the name of each of the candidates is a square, over which is designated "Number of votes received upon straight tickets." The Republican candidates are each given 115 straight votes, and the Democratic candidates 309 straight votes. In this square space opposite the name of Lew Hendee are the figures 115. At the extreme lower part of the square are the figures 309. In the square opposite the name of Russ Alford the figures 115 are written. The clerks and judges of the election who prepared this tally sheet credited Russ Alford with

309 straight votes, the same as every other Democrat on the ticket received, and credited Hendee with 115 straight votes, the same as all the other Republican candidates on the ticket received. The canvassing board, however, over the protest of Russ Alford, gave Hendee 309 straight votes and Alford 115 straight votes, thus changing the figures as returned by the judges and clerks of election from Hendee's 205 votes to 399 votes, and decreasing Alford's vote from 345 to 151 votes. The tally sheet of the second precinct of the town of Avon as originally returned by the election board gave Hendee 201 votes and Alford 254 votes, but the canvassing board for some reason changed the 201 votes of Hendee's to 301. How they arrived at such a conclusion it is impossible for this court to ascertain. The tally sheet itself shows that it has been changed and by giving Hendee 301 votes and Alford 254 votes, makes a total of 555 votes. The poll books show that there was only 483 votes cast in this precinct on election day, or, 72 more votes cast for the two candidates than there were voters at the election.

The bill charges that the canvassing board illegally, erroneously, arbitrarily and fraudulently canvassed the vote. While they were so doing the relator protested against their action and offered to bring proof to show that the votes should be tallied the same as the board of election in the two precincts had certified it to the canvassing board; that the canvassing board had overruled his protest and refused to hear what the judges and clerks of election had to say in regard to the same. From an examination of the original sheets, poll books and the evidence in this case it is clear to this court that the board in canvassing the vote of the two precincts in question acted fraudulently; that in precinct number 2 of the town of Deerfield, Lew A. Hendee received but 205 votes for the office of county clerk, and Russ Alford received 345;

that in the second precinct of the town of Avon, Lew
A. Hendee received 201 votes for county clerk and
Russ Alford received 254 votes; that the action of the
canvassing board in changing the figures on the tally
sheet and poll books was a fraud perpetrated upon
Alford.

The respondents offered no evidence. After argu-
ment of counsel for both sides to the litigation the court
announced that he would not order the reconvening of
the canvassing board, but declared the return showed
the election of the relator and ordered the county
clerk of Lake county to issue a certificate to Russ
Alford as being the duly elected county clerk of Lake
county. A motion for a new trial was overruled, to
which the respondent, Lew Hendee, excepted. The
court then entered judgment upon said finding in
favor of the relator and the writ of mandamus was
awarded. The respondent, Lew A. Hendee, county
clerk, was ordered to issue a certificate of election to
the relator, Russ Alford, as prayed for in said peti-
tion. The case is brought to this court on appeal to
review this action of the circuit court.

The facts of the case are not in dispute as the re-
spondent did not see fit to introduce any evidence to
contradict that given by the relator. The respondents
seriously insist that the court is without jurisdiction
to try a case of this kind as mandamus will not lie to
compel the board of canvassers to reconvene and cer-
tify a different result from that which they have al-
ready done. To support that contention they cite five
cases, the first of which is *Donahough v. Owens,* 277
Ill. 318; the next is *Wells v. Robertson,* 277 Ill. 534;
*People v. Mottinger,* 212 Ill. 530; *People v. Sweitzer,*
185 Ill. App. 282, and *County of Lawrence v. Schmaul-
hausen,* 123 Ill. 321. An examination of each of these
cases discloses wholly different situations from the
facts in the present case. In each of the cases cited
the canvassing board had completed their labors, cer-

tified their results and adjourned *sine die* before a suit had been started. Courts have frequently held that a board in canvassing the result of an election are empowered for one thing and one thing only, namely: to canvass the result of the entire election, and when that work has been completed and they adjourn, they cannot be compelled to reassemble as they have, as a canvassing board, ceased to exist. However, in the present case the suit was started and service had upon each of the respondents while they were still in session, and as soon as summons was served on them the court had assumed jurisdiction, and they could not defeat the purpose of the suit by attempting to finish their labors and adjourn and claim that they had ceased to exist as a canvassing board, especially so when the bill charges and the evidence shows that the canvassing board was wilfully acting fraudulently so far as the rights of the relator were concerned.

In the case of *People v. Mottinger,* 212 Ill. 530, 531, that court, in discussing the writ of mandamus, says, ''These persons are no longer in authority, and on this phase of the petition the court has very great doubt of its power to issue an order to these individuals to re-assemble and reorganize and then do some act differently from what they have already done. Where some officer or some body of persons having authority refuses to do an act which it is his or its legal duty to do, mandamus may be resorted to to require such officer or body to act. If this canvassing board were now in existence and in session and were refusing to do its duty,—refusing to act—the court might be asked to require it to act.'' In the case which we are now considering it seems to us to be immaterial whether the court can or cannot compel the canvassing board to reassemble and make return such as the tally sheets and poll books correctly show, since the court did not require this to be done in the judgment that he entered, but ordered Lew A. Hendee, as county clerk

of Lake county, to issue a certificate of election to Russ Alford, the relator in this case. In the early case of *People ex rel. Fuller v. Hilliard,* 29 Ill. 413, a case so similar to this upon the facts and pleading that we take the liberty of quoting at length from it, the petition filed sets forth that at an election held in November, 1862, the relator was a candidate for representative and that the return of the poll books and certificates of the judges and clerks of the election show that he was elected; that the county clerk called to his assistance two justices of the peace to count and abstract the votes. He charges that there were irregularities in the canvassing of the vote; that the prayer of the petition is for an alternative writ of mandamus against the clerk and the two justices of the peace, to show cause why a peremptory mandamus should not be awarded, requiring them to count the votes in this precinct (meaning the one in controversy) and enter the votes so cast in the abstract of votes, and as against the clerk requiring him to show cause why said writ should not issue to compel him to certify the election of the relator as representative in the general assembly, etc. Hilliard, the county clerk, filed a return to the summons in the mandamus suit and stated that he properly canvassed the vote and issued a certificate of election to a rival candidate, and thereupon the board adjourned and was dissolved. On a hearing of the case the respondent entered a motion to quash the alternative writ of mandamus for numerous reasons. The third is, "Because the defendants are not required by law to reassemble and count the votes in question; Fifth, For want of jurisdiction of the court to hear the case; Sixth, Because the return shows that the county clerk has, prior to the issuing of the writ, issued a certificate of election in conformity with the vote declared." In discussing the case the court says: "The third ground may possibly be well taken, but constitutes no bar to the application. There is no neces-

sity for reassembling the board of canvassers for the return does not deny that the relator is entitled to the certificate if the votes of this precinct are counted. It is admitted that they make up the majority of votes in favor of the relator, so that nothing remains but for the clerk to issue the certificate.''

The court also uses this language: ''Upon the remaining ground of objection, that the county clerk had issued a certificate of election to another party, prior to the issuing out of this writ, it is only necessary to say that it is in proof the certificate was not issued until after notice of this application for this writ. When the fact was brought home to the clerk that this application was made, it would have become quite decorous and proper to pause in his action, and await the decision of the court; the more especially as by issuing the certificate to a party not entitled, the right of the true claimant could not be weakened thereby. The power remains to the clerk to issue the certificate to the party this court may deem entitled to it. *People, etc. v. Rives,* 27 Ill. 246. There are no other means known to the law by which this result can be obtained. Though the House of Representatives is the sole and exclusive judge of the qualifications of its members, this application has no reference whatever to the point of qualifications. Its sole purpose is to procure the requisite evidence to present to that body of a prima facie right to a seat in it, independent wholly of the question of qualification. It is clear, then, the appropriate remedy is not with the House of Representatives. The only remedy the relator has—the only means by which he can obtain evidence of the right claimed, is by this compulsory writ of mandamus. This is very clear. No other process or proceeding can give the specific relief in the premises.

．　．　．　．　．

''In some of the States, this writ is not allowed for such purpose but frequent resort has been had to it

in this State, resulting in decisions quite uniform and harmonious, and which must be our guide in preference to the rulings of courts of other States, cited by the defendants. We have noticed the fact, that the certificate of election, issued by the clerk to King, under which it is claimed the office is filled, was, in fact, issued after notice of this application, and that when notice was served, the canvass had not actually been completed.

"But it is urged by the defendants that the board of canvassers had and exercised a judicial discretion in ruling out these returns; and having acted in good faith, they cannot be compelled to act against their deliberate judgment.

"We have recognized a board of canvassers as ministerial, and not judicial officers. In the case of *Head*, 25 Ill. 325, it was there said the duty of a board of canvassers is a mere mechanical or mathematical duty. They may probably judge whether the returns are in due form, but, after that, they can only compute the votes cast for the several candidates, and declare the result. This class of power is not generally understood to be judicial, but purely ministerial."

The case of *People ex rel. Akin v. Matteson*, 17 Ill. 167, 169, was an application for a peremptory writ of mandamus to compel the election board to issue a certificate of election to the relator. It was urged as a defense to the action that the same would not lie for the reason that a certificate had already been issued to the opposing candidate. The Supreme Court, in discussing this matter, said that it was no defense to the action, and ordered the writ of mandamus to issue. In the case of *People ex rel. Roberts v. Rives*, 27 Ill. 242, the relator filed his petition for a writ of mandamus to compel respondents to issue to him a certificate of election. The court in discussing the merits of the case say: "It is objected that the defendant has already issued a certificate for another, to whom has been

issued a commission for the same office. That cannot affect the rights of the relator. As well might it be contended that a certificate issued to one without color of an election would prevent the clerk from issuing the certificate to the relator. We do not propose to turn the other out of office on an application for a mandamus. They are not parties to this record, and are not bound by this adjudication. All that the court can do, and all it is asked to do in this proceeding, is to compel the county clerk to issue to the relator a certificate of election, which the proof shows he was entitled to. Our right and our duty to do this was fully considered and settled in *People ex rel. v. Matteson,* 17 Ill. 167. A peremptory mandamus should have been issued.''

In the case of *People ex rel. Ryan v. Nordheim,* 99 Ill. 553, the relator filed a petition for a writ of mandamus to compel the canvassing board to issue to him a certificate of election. The court ordered the writ to be issued, and cited with approval *People ex rel. Fuller v. Hilliard,* 29 Ill. 413. This case has been frequently cited with approval, and our Supreme Court has on numerous occasions referred to this case as being the leading authority on this subject.

The respondent, in his petition, charges that the acts of the canvassing board were done deliberately with the intent to defraud him of his election as county clerk of Lake county. It has always been a peculiar province of the courts to grant relief against fraud. In the case of *Moore v. Sievers,* 336 Ill. 316, the court in discussing fraud uses this language: ''The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transactions. A court of equity has always the power to grant relief against judgments and decrees obtained by fraud, and this power will be exercised to prevent the enforcement of a judgment or decree which is against conscience, or where a party had no oppor-

tunity to defend, or was prevented by accident or the fraud or improper management of the opposite party and is without fault on his part. . . . 'The most solemn transactions and judgments may, at the instance of the parties, be set aside or rendered inoperative for fraud. The fact of being a party does not estop a person from obtaining in a court of equity relief against fraud. The court of chancery is always open to hear complaints against it, whether committed *in pais* or in or by means of judicial proceedings. In such cases the court does not act as a court of review, nor does it inquire into irregularities or errors of proceeding in another court but it will scrutinize the conduct of the parties, and if it finds that they have been guilty of fraud in obtaining a judgment or decree it will deprive them of the benefit of it and of any inequitable advantage which they have derived under it.' ''

It is our opinion that the tally sheets and poll books of the precincts in Lake county, over which this controversy arose, plainly show that the canvassing board did not properly canvass the votes of the relator and respondent, but, that it should have certified that in the second precinct of Deerfield township, Russ Alford received 345 votes for county clerk, and Lew Hendee received 205 votes for the same office, and in the second precinct of the town of Avon, Lew A. Hendee received 201 votes for county clerk and Russ Alford received 254 votes for said office, and said board should have certified that Russ Alford received a total vote in Lake county of 18,675 for county clerk of said county, and that Lew A. Hendee received a total of 18,528 for county clerk in said county.

The writ of mandamus was properly ordered and issued to compel Lew A. Hendee, the county clerk, to issue to Russ Alford a certificate of election to the office of county clerk of Lake county, Illinois. The judgment of the circuit court of Lake county should be, and is, hereby affirmed.

*Judgment affirmed.*