MANUEL A. TORRES, Plaintiff-Appellant, v. THE BOARD OF ELEC-
TION COMMISSIONERS FOR THE CITY OF CHICAGO *et al.*, Defend-
ants-Appellees.

First District (4th Division)   Nos. 86—0740, 86—0786 cons.

Opinion filed April 14, 1986.—Rehearing denied April 16, 1986.

McMORROW, J., dissenting.

William J. Harte, Ltd., of Chicago (William J. Harte, Jeffrey B. Whitt,
Joseph F. Tighe, and Richard J. Prendergast, of counsel), for appellant.

Thomas E. Johnson and Jenner & Block, both of Chicago (Jerold S. Solovy, Barry Sullivan, Michael T. Brody, Diane E. Ratekin, and Catherine A. Daubard, of counsel), for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

On March 18, 1986, there was a special aldermanic election in the city of Chicago in which the plaintiff, Manuel A. Torres, and the defendant, Luis V. Gutierrez, were candidates for the office of alderman in the 26th ward. According to the raw vote totals announced by the board of election commissioners for the city of Chicago and the canvassing board, Gutierrez was the apparent winner of that election. On March 21, 1986, Torres filed a complaint in the circuit court of Cook County seeking, among other things, to enjoin the board of election commissioners and Stanley T. Kusper, county clerk for Cook County, from certifying Gutierrez as the winner. The matter was heard before Circuit Court Judge Eugene Wachowski. Torres alleged that there were certain voting irregularities, the most significant being that the polls were open beyond the voting times directed under the Election Code, 6 a.m. to 7 p.m. Ill. Rev. Stat. 1985, ch. 46, par. 17—1.

On election date at approximately 5:30 p.m., James P. Chapman, appeared before circuit court Judge Joseph Schneider and based upon certain representations, but without notice to his opponent Torres, obtained a mandatory injunction requiring that the polling places in five precincts of the 26th ward remain open until 9 p.m., two hours beyond the ordinary closing time. Chapman alleged that this action was necessary due to the fact that those polls did not open in a timely fashion at 6 a.m. After hearing additional testimony and evidence with respect to the petition for injunctive relief, Judge Wachowski denied Torres' request. This appeal is taken from that denial. In addition, the order of Judge Schneider requiring that the polls remain open is also being appealed and will be considered as the second issue in this appeal.

Gutierrez makes several contentions concerning this appeal, among them that the trial court acted within its discretion in denying Torres' request for preliminary injunctive relief. With this contention we agree. A preliminary injunction may be issued if the plaintiff proves, by a preponderance of the evidence, that (1) he possesses a certain and clearly ascertained right which needs protection; (2) he will suffer irreparable injury without the protection of the injunction; (3) there is no adequate remedy at law for the injury; and (4) he is likely to be successful on the merits. (*Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 499, 422 N.E.2d 1166.) We believe the plaintiff has failed to prove the inadequacy of the remedy at law and also has failed

to prove a likelihood of success on the merits.

There is a remedy at law in this case which precludes the granting of the extraordinary remedy of injunctive relief. (*City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 312, 438 N.E.2d 159.) The plaintiff in his brief on appeal from Judge Wachowski's order specifically requests this court to order a supplementary election and enjoin the certification of Gutierrez. A new election, however, is precisely the relief obtainable in an election contest under the statute, section 21—27 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 21—27). That section provides that any candidate may contest the election for alderman within five days after the election by filing a complaint setting forth the grounds. The circuit court of Cook County will then have jurisdiction to conduct hearings and determine whether the candidate who appears to have been elected was in fact elected. If that candidate was not in fact duly elected, a supplementary election shall be conducted as provided for in section 21—26 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 21—26).

Not only is there a remedy at law, the Illinois courts have consistently stated that an election contest was unknown at common law and is strictly a creature of statute. (*In re Contest of Election for Governor* (1983), 93 Ill. 2d 463, 474, 444 N.E.2d 170; *Young v. Mikva* (1977), 66 Ill. 2d 579, 363 N.E.2d 851.) Election contests under statute have been the subject of litigation in the courts for at least a century, during which time an entire body of case law has developed to explain the law of election contests. (See, *e.g., People ex rel. Cummings v. Head* (1861), 25 Ill. 325; *Cleland v. Porter* (1874), 74 Ill. 76; *Smiley v. Lenane* (1936), 363 Ill. 66, 1 N.E.2d 213; *Whitley v. Frazier* (1961), 21 Ill. 2d 292, 171 N.E.2d 644; *Young v. Mikva* (1977), 66 Ill. 2d 579, 363 N.E.2d 851; *In re Contest of Election for Governor* (1983), 93 Ill. 2d 463, 444 N.E.2d 170.) Torres, however, would have the circuit court, under the guise of its equitable powers, overturn the election solely on the contention that the circuit court erroneously extended the voting hours from 7 p.m. to 9 p.m. on election day. This request and the suggestion on appeal that the electoral process was hopelessly and irretrievably tainted cannot supplant this body of law. The separate matter consolidated with this appeal, the ruling of Judge Schneider extending the polling hours, even if it were found to be improper, is not sufficient to overcome the fact that the statutory electoral contest is the proper way to proceed. The decision as to the propriety of Judge Schneider's ruling is simply a fact that will have to be considered in the election contest. Additionally, we note that Torres has filed a separate suit under the election-contest statute seeking the same relief as

that sought here. It would seem patent that both of these causes of action may not subsist side by side.

While there is a remedy at law, Torres contends that that remedy is inadequate. He argues that it is inadequate because an election contest will take quite some time, and he needs the injunctive powers of the court to prevent Gutierrez from being certified by the election board and assuming office. As to the time argument, the statute specifically provides that the election contest is to proceed with expedition. Ill. Rev. Stat. 1985, ch. 24, par. 21—27, in conjunction with Ill. Rev. Stat. 1985, ch. 46, par. 7—63.

■ As to the contention that Torres needs the aid of the court to issue an injunction, it must be reiterated that election contests are matters of statutory law rather than common law. As such, the Illinois General Assembly has detailed the procedures to be followed and the rights to be afforded in election-contest proceedings. Clearly absent from the statute, however, is any provision for the granting of the type of injunctive relief sought by Torres. Thus, to grant Torres' request would require that this court judicially amend the Election Code. Such judicial legislation, we believe, is beyond the duty and power of this court. Moreover, the possible consequences of providing for injunctions could mean that during the course of an election contest, a person who was the apparent winner according to the electoral board would be prevented from assuming office and the predecessor who presumably lost would still hold office. In another situation, if there was a vacancy in the office, the citizens in that governmental unit would be required to go without any representation. We believe that these concerns foreclose this court from using its equitable powers in aid of the statute. Consequently, the plaintiff has failed to prove that the remedy at law is inadequate.

As to the contention of Gutierrez that there is no probability of success on the merits, the previous comments are directly implicated. Specifically, there is no probability of success on the merits because the ultimate relief requested by Torres, a supplemental election, could not properly be granted by the trial court outside the strictures of the election-contest statute.

■ The second issue in this appeal stems from Torres' appeal from the order entered on March 18, 1986, by Judge Joseph Schneider mandating that the polls in the five precincts in the 26th ward remain open until 9 p.m. Torres filed a notice of appeal from that order on March 27, 1986. Because of the exigencies of the matter, on March 27, 1986, plaintiff requested that the appeal from the order of Judge Wachowski be consolidated with the appeal from Judge Schneider. On

March 31, 1986, this court granted the order of consolidation. On April 1, 1986, Gutierrez filed an objection to the motion to consolidate, along with a motion to dismiss the appeal. The motion to dismiss the appeal was denied, and a majority of this court reaffirmed the order of consolidation. While all parties were anxious to expedite this matter, we find that the record in this case is inadequate and the briefs do not properly present the issues sufficiently for this court to rule upon. As a result, the Schneider appeal must be dismissed without prejudice. *Bank of Ravenswood v. Maiorella* (1982), 104 Ill. App. 3d 1072, 1074, 433 N.E.2d 1044; *In re Marriage of Snow* (1980), 81 Ill. App. 3d 1148, 1149, 401 N.E.2d 1352.

Supreme Court Rules 341 through 343 (87 Ill. 2d Rules 341 through 343) provide for the filing of an adequate brief and record in order for the appellate court to consider the issues on appeal. In this case, the record consists only of the notice of appeal from Judge Schneider's order, the order itself, and Chapman's petition for mandatory injunction. Although in the briefs accompanying the appeal from Judge Wachowsi's order Torres questions the propriety of Judge Schneider's ruling, there have been no briefs submitted to this court setting forth legal arguments with specific regard to Judge Schneider's order. Without a statement of facts, points and authorities, cohesive legal argument or an adequate record, an informed review of Judge Schneider's order by this court is impossible. (*Wilson v. Continental Body Corp.* (1981), 93 Ill. App. 3d 966, 969, 418 N.E.2d 56.) This court needs and is entitled to have briefs submitted that are articulate and present organized and cohesive legal argument in accordance with the applicable supreme court rules. (*In re Marriage of Souleles* (1982), 111 Ill. App. 3d 865, 869, 444 N.E.2d 271.) Without such, the appeal from Judge Schneider's order must be dismissed without prejudice.

For the foregoing reasons, the order of Judge Wachowski if affirmed and the appeal from the order of Judge Schneider is dismissed without prejudice.*

JIGANTI, J., concurs.

---

*On March 25, 1986, on plaintiff's motion, this court enjoined the board of election commissioners for the city of Chicago from certifying the election results. In order to maintain the status quo in the event the plaintiff chooses to seek relief in a higher court, the injunction will remain in effect until 12 p.m. Central Standard Time, April 16, 1986. At that time the injunction will dissolve.

JOHNSON, JIGANTI and McMORROW, JJ., concur.

JUSTICE McMORROW, dissenting:

For the reasons set forth more fully below, I respectfully dissent from the decision of the majority.

The case at bar represents a consolidation of two appeals from interrelated orders of the circuit court of Cook County pertaining to the validity and regularity of the special aldermanic election held in the 26th ward of the city of Chicago on March 18, 1986. One appeal, taken by Torres, a candidate for alderman in the ward election, seeks review of the orders of the trial court which extended voting hours in certain precincts of the ward and directed sequestration of votes cast during this extension of polling time. For the sake of clarity, I will refer to these orders of the trial court as the "voting hours orders" and the appeal from these orders as the "voting hours appeal."

The second appeal at issue here, also instituted by Torres, seeks review of the trial court's later denial of his motion for a preliminary injunction. This motion sought to restrain the Chicago board of election commissioners (the board) from certifying Gutierrez as the elected alderman for the 26th ward. Torres sought the preliminary inunction so that the status quo could be preserved until the trial court ruled upon his underlying complaint for injunctive relief. This pleading challenged the validity of the election because of the alleged wrongful issuance of the voting-hours orders, the board's allegedly wrongful removal of 50 persons from the roll of registered voters in the ward prior to the election, and the allegedly illegal voting of one individual in the ward when that individual did not reside in the ward. For the sake of clarity, I will refer to the trial court's order which denied Torres' motion for preliminary injunction as the "preliminary injunction order" and the appeal from this order as the "preliminary injunction appeal."

In my view the majority's dismissal "without prejudice" of the appeal from the voting-hours orders is erroneous because adjudication of the voting-hours appeal is crucial to a full understanding and well-reasoned disposition of the appeal from the preliminary injunction order; severed consideration of the preliminary-injunction appeal alone is likely to lead to an implicit adjudication of the merits of the voting-hours appeal, which is what the majority decision accomplishes; and the more appropriate method to remedy the majority's perceived deficiencies in the record and briefs regarding the voting-hours appeal would be to direct the parties to supplement the record and briefs, rather than to dismiss the entire appeal with the oblique remark that dismissal is "without prejudice" as the majority does here.

I also disagree with the majority's affirmance of the preliminary-

injunction order. The majority's decision concludes, in essence, that Torres' motion for a preliminary injunction was properly denied by the trial court because his sole and exclusive remedy is a statutory election-contest action. In my estimation this legal determination is in error because it misconstrues Illinois Supreme Court precedent regarding the scope of an election-contest action, ignores Illinois Supreme Court case law which may recognize the right to challenge the validity of an election under legal theories other than that of an election-contest action, and improperly disposes of the actual substantive merits of Torres' complaint for injunctive relief.

BACKGROUND

Torres sought preliminary injunctive relief to restrain the board's certification of Gutierrez as the victor of the aldermanic election until the trial court had adjudicated the merits of Torres' complaint for injunctive relief. Torres' complaint alleged that such injunctive relief was appropriate and necessary because of certain alleged irregularities in the aldermanic election. In his complaint, Torres alleged that the *ex parte* and without-notice hearing and voting-hours orders were erroneously entered; that the ballots cast between 7 p.m. and 9 p.m. were not sequestered or segregated from the ballots cast prior to 7 p.m. as ordered by the court; and that if only appropriate valid ballots were counted and certain improperly disenfranchised voters permitted to cast their votes, he, Torres, would be the winner of the election.

Of central importance to Torres' complaint was his claim that the voting-hours orders, which permitted the extraordinary relief of a mandatory injunction keeping certain polls open beyond the hours provided for by statute (Ill. Rev. Stat. 1985, ch. 46, par. 17—1)[1], were entered without sufficient factual support in either the petition which requested the extension of voting hours in certain precincts (the "voting hours petition") or the evidentiary hearing upon which the voting-hours orders were based (the "voting hours hearing").

Torres argued in substance that the voting-hours petition was insufficient because it had been brought by an individual, Chapman, who did not live in the ward and thus lacked standing to present the voting-

---

[1]Section 17—1 provides:

"The polls shall be opened at the hour of 6:00 a.m. and continued upon until 7:00 p.m. of the same day, at which time the polls shall be closed; but if the judges shall not attend at the hour of six o'clock in the morning, or if it shall be necessary for the electors present to appoint judges to conduct the election, as herein prescribed, the polls may, in that case, be opened at any hour before the time for closing the same shall arrive, as the case may require."

hours petition; that it was insufficient because the pleading on its face was not based upon the petitioner's personal knowledge of the facts alleged in the petition; that the testimony presented at the voting-hours hearing was insufficient, as a matter of law, to justify the order; that the petitioner, Chapman, in the voting-hours hearing did not establish a wrong in need of redress; and that, therefore, Chapman was not entitled to the extraordinary relief granted him in the voting-hours orders.

Gutierrez' answer to Torres' complaint, if any was filed, is not included in the appellate record presently before us. The record does contain Gutierrez' motion to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), as well as the trial court's order which denied Gutierrez' motion to dismiss.

Based upon Torres' motion to enjoin the board from certifying Gutierrez as the elected candidate, the trial court held an evidentiary hearing to determine the likelihood of Torres' success on his complaint for injunctive relief (the "preliminary injunction hearing"). Two individuals testified at this preliminary injunction hearing on behalf of Torres. One of them, Chapman, was the person who had filed the voting-hours petition. The other was an employee with the board of election commissioners.

Chapman's testimony consisted of his recollections of the statements made before the trial court at its evidentiary hearing regarding voting hours. He testified that he admitted at the voting-hours hearing to have no personal, first-hand knowledge of the hours at which the polling places at issue did indeed open on the morning of March 18, and admitted that his knowledge of the allegations contained in the petition was based on hearsay and/or double or triple hearsay. Gutierrez cross-examined Chapman at the court's preliminary-injunction hearing regarding his testimony at the prior voting-hours hearing.

The employee of the board testified in substance and in pertinent part that the board received no complaints of late openings on the day of the special election from the precincts specified in the voting-hours petition.

Following the testimony of Torres' witnesses, the trial court dismissed the petition for injunctive relief, stating that it found "no evidence of fraud in that testimony."

Torres instituted the present interlocutory appeal from the trial court's denial of his motion for a preliminary injunction, claiming that Gutierrez had not been properly or duly elected and therefore certification of him as the winner should be stayed. Torres argues that the sta-

tus quo should be maintained pending a determination of the merits of his underlying complaint.

In his appellate brief regarding Torres' preliminary-injunction appeal, Gutierrez argued that Torres' complaint was improper, *inter alia*, because he should have instituted an appeal from the court's earlier voting-hours orders. Torres' appeal from the trial court's voting-hours orders followed. In the voting-hours appeal, Torres requests this court to vitiate the election of March 8 and order a supplementary election because no verification process is available to determine who received the most votes, or whether either candidate received a majority of the votes cast by 7 p.m. He argues that the results of the election were irreparably tainted because of the erroneous voting-hours orders.

Pursuant to Torres' motion, this court consolidated the voting-hours appeal with the preliminary-injunction appeal. Gutierrez thereafter filed objections to the motion to consolidate and a motion to dismiss the voting-hours appeal. In the motion to dismiss the voting-hours appeal, Gutierrez argues that Torres was not a party to the proceeding that resulted in the voting-hours orders, and thus lacked standing to institute an appeal from those orders. After due consideration, this court entered an order which reaffirmed its order consolidating the two appeals and denied Gutierrez' motion to dismiss the voting-hours appeal.

On the day of oral argument on the consolidated appeals, and immediately prior to the commencement of oral argument, this court advised both parties and their respective attorneys in open court of its decision to reaffirm consolidation and to deny Gutierrez' motion to dismiss the voting-hours appeal. At oral argument, the parties' attorneys presented argument to the court regarding the merits of both appeals, and questions were propounded from the bench regarding both appeals.

VOTING-HOURS APPEAL

Originally the majority of this panel agreed to a consolidation of the voting-hours appeal with the preliminary-injunction appeal. This consolidation was granted because it was determined that the two appeals were interrelated such that one appeal could not be fully and adequately adjudicated without equal consideration and review of the other appeal. See, *e.g., Nutwood Drainage & Levee District v. Mamer* (1956), 10 Ill. 2d 101, 104, 139 N.E.2d 247; *Buschmann v. Walsh* (1970), 120 Ill. App. 2d 242, 244, 256 N.E.2d 882.

The majority decision, however, severs its review of the two appeals. As a result the majority affirms the trial court's preliminary-

injunction order, but "dismisses without prejudice" the appeal from the voting-hours order, and thus precludes herein my examination of the propriety of the voting-hours orders.

In my estimation this severance of the two appeals is clearly in error. The majority's analysis refuses to recognize that Torres' underlying complaint for injunctive relief, upon which the preliminary-injunction order was founded, is based primarily and most importantly upon the alleged invalidity of the voting-hours orders. Indeed, it is the argued invalidity of these orders, as well as the alleged failure of precinct officials to comply with the court's voting-hours orders regarding vote sequestration, which lies at the very heart of Torres' claim that the special aldermanic election was tainted by such irregularities that the board should be enjoined from certifying Guiterrez as the elected candidate. As a result, the majority's analysis of the preliminary-injunction order is myopic and distorted. It further prevents this court from making the full, complete adjudication of either appeal which both parties have requested this court to render in the cases at bar.

In view of the majority's dismissal of the voting-hours appeal without an adjudication of the merits of that appeal, I render no opinion on the substantive aspects of the voting-hours appeal in this dissent.

I would note, however, that the majority does not feel itself compelled to remain silent on the validity of Torres' attempted appeal from the voting-hours orders of the circuit court. For example, in the majority's explanation of its reason for concluding that affirmance of the trial court's preliminary injunction order was proper, the majority ventures the opinion that: "[t]he separate matter consolidated with this appeal, the ruling of Judge Schneider extending the polling hours, even if it were found to be improper, is not sufficient to overcome the fact that the statutory electoral contest is the proper way to proceed. *The decision as to the propriety of Judge Schneider's ruling is simply a fact that will have to be considered in the election contest.*" (Emphasis added) 142 Ill. App. 3d at 957.

I find the majority's conclusion that Torres' challenge of the validity of the voting-hours orders will have to be considered in an election-contest action, and thus by inference not on direct appeal to this court, to be premature. In view of the fact that the majority states that the voting-hours appeal is "dismissed without prejudice," it is untimely for the majority to conclude, by obvious inference, that a later voting-hours appeal will be, in essence, without merit. Under these circumstances, the majority should have addressed the merits of the voting-hours appeal directly.

I emphasize that I express no opinion on the soundness of the ma-

jority's conclusion, *per se.* Instead I merely wish to underscore that the majority's decision passes upon the very matter presented in the voting-hours appeal which the majority orders "dismissed without prejudice."

If the majority truly thinks that the record or briefs with regard to the voting-hours appeal is inadequate to render an informed decision, as the majority states in its opinion, it would have been more expeditious for the majority to simply exercise its authority pursuant to Illinois Supreme Court rules, and order the parties to supplement the record and briefs already filed. (See 87 Ill. 2d Rules 323(c), 329, 341(h).) I am unaware of any sound reason to simplistically dismiss the appeal with the nebulous, ambiguous remark that dismissal is "without prejudice," without even explaining in what respect the dismissal is "without prejudice."

In fact, a consideration of the preliminary-injunction appeal separately from the voting-hours appeal today may deprive Torres of *any* cause of action or legal forum in which to litigate his contentions. For example, Gutierrez adopted three positions before the trial court regarding the substantive merits of Torres' complaint. These positions were that: (1) Torres' proper avenue of redress was an election-contest action; (2) Torres could not state a claim entitling him to relief pursuant to an election-contest action because he would be unable to prove fraud in the procurement of the voting-hours orders, nor would he be able to prove that the voting-hours orders affected the outcome of the election (since the votes cast after 7 p.m. in the precincts at issue were not sequestered in compliance with the voting-hours orders); and (3) Torres could have and should have appealed from the voting-hours orders, as these were final orders from which he could have appealed once the trial court denied his motion to vacate the orders.

Gutierrez adopts each of these arguments before this court upon review of the preliminary-injunction order. In addition, he argued to this court in his motion to dismiss Torres' appeal from the voting-hours orders that dismissal of the voting-hours appeal was required because Torres was not a party to the proceedings that resulted in those orders and as a result lacked standing to appeal therefrom.

I render no judgment on the validity of any of Gutierrez' arguments themselves. I do note, however, that they may appear at first blush to bear some resemblance to a conundrum and may, if accepted unwittingly by the majority because of a severance of the two appeals, place Torres in the position of having a wrong for which there is no remedy. The net effect of Gutierrez' arguments, if adopted, could be essentially this: irrespective of the gravity and merits of Torres'

charges regarding the invalidity of the voting-hours orders and the impact of these orders on the legality and outcome of the special election, Torres would have no forum or action in which to litigate his contentions. In my estimation this result would be both unfortunate and disturbing, as all concerned with the present controversy, including the residents of the 26th ward, are entitled to full presentation in a court of law of the legal and factual questions at issue here, as well as a clear, coherent and complete adjudication of their merits.

### PRELIMINARY INJUNCTION APPEAL

Torres' appeal from the preliminary-injunction order of the circuit court comes before this court as an interlocutory appeal as a matter of right in accordance with Illinois Supreme Court Rule 307(a) (87 Ill. 2d R. 307(a)). The issuance of a preliminary injunction "depends upon a balancing of several factors, including the likelihood of success on the merits, the lack of adequate remedy at law, prospect of irreparable harm if the injunction is not issued and a comparison of the relative hardships imposed on the parties." (*Washington v. Walker* (7th Cir. 1976), 529 F.2d 1062, 1065, quoted with approval in *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 387, 483 N.E.2d 1271.) A preliminary injunction is addressed to the broad equitable powers of the trial court. *E.g, American National Bank & Trust Co. v. Chicago Title & Trust Co.* (1985), 134 Ill. App. 3d 772, 777, 481 N.E.2d 71.

The majority affirms the trial court's preliminary-injunction order on the grounds that Torres has an adequate remedy at law, *i.e.*, an election-contest action pursuant to section 21—27 of what is commonly referred to as the Revised Cities and Villages Act of 1941, as amended, of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 21—27), and that Torres failed to show a likelihood of success on the merits of his complaint for injunctive and other relief, since his sole and exclusive remedy for challenging the validity or the results of an aldermanic election is the statutory relief afforded in section 21—27.

The majority reasons that "[t]here is a remedy at law in this case which precludes the granting of the extraordinary remedy of injunctive relief. (*City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 312, 438 N.E.2d 159.) The plaintiff [Torres] in his brief on appeal from Judge Wachowski's order specifically requests this court to order a supplementary election and enjoin the certification of Gutierrez. A new election, however, is precisely the relief obtainable in an election contest under the statute, section 21—27 of the Illinois Municipal Code

(Ill. Rev. Stat. 1985, ch. 24, par. 21—27)." 142 Ill. App. 3d at 957.

Although the majority describes the relief requested by Torres as being the ordering of a supplementary election, that relief was requested only in the voting-hours appeal, which the majority has dismissed. The relief requested in the complaint and notice of appeal in the only remaining appeal (the appeal from the denial of injunctive relief), is to preliminarily restrain and enjoin the board from certifying Gutierrez as the winner of the election until there has been a hearing on the merits of Torres' underlying complaint. I note that the relief of ordering a supplementary election was requested in the brief filed by Torres, but inasmuch as that relief was not requested in Torres' complaint or notice of appeal, I deem the request for that relief on appeal waived because it was not requested before the trial court, and therefore not properly considered by the majority.

In addition, the majority's reliance upon *City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 438 N.E.2d 159, is misplaced. The *City of Chicago* case dealt with the propriety of a permanent injunction ordered by the trial court following a full hearing on the merits of the parties' claims. The decision has no bearing upon the allowance or denial of a motion for a preliminary injunction before there has been a full evidentiary hearing on the plaintiff's allegations in his underlying complaint, which is the posture in which the case at bar is presently before us.

The majority also determines that Torres is not entitled to the injunctive relief he seeks. In this regard the majority posits that injunctive relief is not available in an election-contest action and further that injunctive relief would work undue hardship on the voters.

The majority's reasoning that injunctive relief is not available in an election-contest suit is founded upon the assumption that a court that entertains an election-contest action is deprived of ancillary and incidental jurisdiction to do what is necessary, in equity, to carry into effect the court's express statutory grant of jurisdictional authority. See, *e.g., Dodge v. Cole* (1881), 97 Ill. 338, 358; *Cowdery v. Northern Trust Co.* (1944), 321 Ill. App. 243, 254, 53 N.E.2d 43.

The stated concerns of the majority that injunctive relief would either prohibit a presumed victorious candidate from occupying the elected office or permit a vacancy in office to go unfilled such that the "citizens in that governmental unit would be required to go without any representation" (142 Ill. App. 3d at 958) are also unpersuasive. Here the majority assumes that a certified candidate, whom citizens in fact may not have elected because of the unfairness of the election, is preferable to an interim period with interim representation until the

duly and properly elected candidate is chosen by the people in a fair election. The majority's analysis misses the fundamental principle that a candidate is entitled to occupy an elected office only after that individual has been properly elected in accordance with law and pursuant to a fair and valid election.

The majority also determines that Torres is unlikely to succeed upon the merits of his complaint for injunctive relief. In this respect the majority observes that "there is no probability of success on the merits because the ultimate relief requested by Torres, a supplemental election [the inaccuracy of this contention is discussed above], could not properly be granted by the trial court outside the strictures of the election-contest statute." (142 Ill. App. 3d at 958.) Here the majority cites to Illinois Supreme Court precedent which the majority concludes to be "at least a century [of] *** an entire body of case law [that] has developed to explain the law of election contests. [Citations.]" 142 Ill. App. 3d at 957.

My review of these decisions indicates, however, that none of them holds or implies either that an election-contest claim is an exclusive cause of action, or that injunctive relief is not available in any cause of action, regardless of legal theory, to challenge the validity of an election. See *In re Contest of Election for Governor* (1983), 93 Ill. 2d 463, 474, 444 N.E.2d 170 (election-contest actions are of statutory creation, such that court's jurisdiction over action itself is limited by statute); *Young v. Mikva* (1977), 66 Ill. 2d 579, 582, 363 N.E.2d 851 (courts have jurisdiction over election actions *per se* only to extent provided by statute); *Whitley v. Frazier* (1961), 21 Ill. 2d 292, 294-95, 171 N.E.2d 644 (although election-contest action is statutory in origin, "ordinary [chancery] practice rules apply with regard to amendment of pleadings"); *Smiley v. Lenane* (1936), 363 Ill. 66, 69, 1 N.E.2d 213 (action to contest an election is not in the nature of a "bill in chancery"); *Cleland v. Porter* (1874), 74 Ill. 76, 78-79 (early closing of polls does not *ipso facto* render election invalid); *People ex rel. Cummings v. Head* (1861), 25 Ill. 287, 291) (*mandamus* granted to compel former official to deliver insignia of office to newly elected official).

In fact, it would appear that all of the election-contest decisions cited by the majority stand for, essentially, only one general principle regarding election-contest actions, and nothing more. That principle is, simply, that a "suit to contest an election is *sui generis*. It is neither an action at law nor in equity, although the proceedings are conducted as cases in chancery and the requirements of service of process are the same as in chancery proceedings." *McKinley v. McIntyre* (1935), 360 Ill. 382, 385, 196 N.E. 506.

In essence, the majority, without citation to authority, concludes that the statutory right to an election-contest action abolished other similar statutory or common law rights. (See *generally* 3A Sutherland, Statutory Construction secs. 61.01 through 61.06 (4th ed. 1974).) Therefore, the majority's conclusion that an election-contest action is an exclusive remedy is difficult to reconcile with Illinois Supreme Court decisions that have granted the relief of *mandamus, quo warranto,* declaratory judgment, and injunction to challenges to the validity or the administration of an election. See *Allen v. Powell* (1969), 42 Ill. 2d 66, 244 N.E.2d 596 (injunction); *Progressive Party v. Flynn* (1948), 400 Ill. 102, 79 N.E.2d 516 (declaratory judgment); *People ex rel. Frazier v. Altenberg* (1913), 260 Ill. 191, 103 N.E. 67 (*quo warranto*); *Snowball v. People ex rel. Grupe* (1893), 147 Ill. 260, 35 N.E. 538 (*quo warranto*); *People ex rel. Ryan v. Nordheim* (1881), 99 Ill. 553 (*mandamus*); *People ex rel. Fuller v. Hilliard* (1862), 29 Ill. 413 (*mandamus*); see also *People ex rel. Alford v. Hendee* (1935), 279 Ill. App. 521 (*mandamus*); *Patterson v. People ex rel. Allen* (1895), 65 Ill. App. 651 (*quo warranto*); *cf. Rock v. Thompson* (1981), 85 Ill. 2d 410, 426 N.E.2d 891 (*mandamus*); *Rock v. Thompson* (1981), 85 Ill. 2d 410, 457, 426 N.E.2d 891 (Moran, J., dissenting) (*quo warranto*).

Indeed it would even appear that the Illinois Supreme Court has already expressly rejected the very conclusion of the majority in the case at bar that an election-contest claim is an exclusive cause of action. In *Snowball v. People ex rel. Grupe* (1893), 147 Ill. 260, 35 N.E. 538, the unsuccessful candidate for a seat on a board of education challenged the right of his opponent to be certified as elected to the contested position on the board; the unsuccessful candidate claimed that the election was invalid because the polling place had been improperly selected by the board of education. The successful candidate argued that his opponent's *quo warranto* action was nothing more than an election-contest claim. The court rejected this analysis, stating:

> "[T]he weight of authority is in favor of the position, that the special remedy given by [the election-contest] statute in such cases is merely cumulative, and not exclusive of the remedy by *quo warranto*. The general principle is, that, in the absence of any controlling constitutional restrictions upon the subject, the jurisdiction of the courts to proceed by information in the nature of *quo warranto* is not taken away by a statute which prescribes a special proceeding, unless there are express words in the statute itself taking away such jurisdiction, or unless it appears to have been the manifest intention of the legislature to confine the remedy to the prescribed proceeding, and to the designated

tribunal." 147 Ill. 260, 264-65, 35 N.E. 538.

The issue of whether a party is likely to succeed on the merits pertains to whether the party's arguments "raise a fair question as to the existence of the right which he claims and [whether he] can satisfy the court that such matters should be preserved in their present state until such questions can be disposed of." (*Nestor Johnson Manufacturing Co. v. Goldblatt* (1939), 371 Ill. 570, 574, 21 N.E.2d 723, quoted with approval in *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 386, 483 N.E.2d 1271.) Because of Illinois Supreme Court precedent affording a variety of equitable or extraordinary relief to actions challenging the validity of an election, I question the majority's conclusion that an election-contest action is the sole means of legal redress of claims of irregularity in the administration of an election. My analysis of Illinois election law indicates that an election-contest action may not be the exclusive remedy the majority would make it appear to be. In any event, it would appear that the factual and legal implications of the case at bar—where allegedly erroneous voting-hours orders of the circuit court are argued to have tainted the outcome of an election— has never been addressed in any reported decision in this State.

Given these considerations, it is my opinion that Torres' likelihood of success on the merits and inadequacy of legal remedy were sufficiently established to warrant the issuance of a preliminary injunction pending ultimate resolution of the parties' controversy.

It should be observed that the majority's premise that Torres' exclusive relief is to file an election-contest action might be interpreted as an adjudication of the substantive merits of Torres' underlying complaint for injunctive relief. If the majority has indeed determined the substantive merits of his claim, such ultimate adjudication at this juncture in the proceedings is in error. The Illinois Supreme Court and the appellate courts have held repeatedly that the purpose of appellate review of an interlocutory appeal such as the one at bar does not include the adjudication of the factual or legal merits of the appellant's underlying cause of action *per se.* Indeed, in *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 483 N.E.2d 1271, the Illinois Supreme Court emphasized that "[t]he purpose of a preliminary injunction is not to determine controverted rights or to decide controverted facts or the merits of the case. [Citations.]" (108 Ill. 2d 373, 385, 483 N.E.2d 1271.) The supreme court cautioned both trial courts and courts of review to be mindful that motions for preliminary injunctions and pleadings for full injunctive relief are separate and distinct rights of the litigants and are governed by independent rules of determination and review. The court advised:

"In a hearing on a motion for a preliminary injunction \*\*\*, it is quite easy and tempting to expand the hearing into the merits of the ultimate question as to whether a permanent injunction should issue. Such a temptation should be resisted, and the distinction between the two writs should be maintained. The purposes of these two writs are different and distinct. The proof that is required to support them is not the same. It is true that if the proof shows that the plaintiff has no protectable interest, \*\*\* then a preliminary injunction should not issue. However, in a hearing for a preliminary injunction, plaintiff need not carry the same burden of proof that is required to support the ultimate issue." 108 Ill. 2d 373, 385-86, 483 N.E.2d 1271.

The purpose of the rule that a court of review should not consider controverted legal issues is to ensure that appellate courts do not render premature, advisory decisions on the merits of an underlying claim before the parties and the trial court have had an opportunity to fully explore the nature, scope and content of that underlying cause of action. In the case at bar, the time lapse from the date of Torres' filing of his complaint for injunctive relief to the date of his appeal from the preliminary-injunction order was only three working days. Neither the parties, the trial court, nor this court upon review has had adequate time or opportunity to fully ponder in detail all of the complexities of the case at bar. Nor indeed was this court called upon in the present appeal from the preliminary-injunction order itself to render an adjudication on the substantive merits of Torres' complaint for injunctive relief. (See 87 Ill. 2d R. 318(b).) If the majority's decision is indeed a *sub silentio* ruling on the merits of Torres' underlying complaint, it is remiss, given the court's limited scope of appellate review at this point in the proceedings.

CONCLUSION

In the case at bar the trial court, *ex parte* and without notice to Torres, granted extraordinary equitable relief (*viz.*, a mandatory injunction to keep the polls open in certain selected precincts beyond the statutory time period) based upon an unverified petition presented by a person alleged to have no standing to present such a petition and who testified he had no personal knowledge of the facts contained in his petition, and who it is alleged showed no injury or entitlement to the extraordinary equitable relief afforded. Under these circumstances, Torres' contention that "[i]t is incongruous, to say the least, for Gutierrez to maintain that a private individual, Chapman, who is not even a resident of the 26th Ward and whose opportunity to vote was in no

way impaired, may invoke the general equitable powers of the Court on Election Day in an attempt to obtain relief with respect to the conduct of the election, but that a party injured by the grant of that request for relief may not invoke the general equitable powers of the Court to redress the wrongs occasioned by the improper grant of relief" is deserving of consideration. It would appear the majority permits the anomalous result that a court door might be opened to extraordinary equitable relief, without notice to the affected party, upon the allegations of someone who may lack standing and who admits lack of personal knowledge of the facts upon which he sought equitable relief, but that same court door should be closed to providing equitable relief to one allegedly injured by that court's exercise of its equitable powers.

In my estimation, Torres' underlying complaint raises serious allegations of substantial irregularities of a special aldermanic election in the city of Chicago. These allegations of irregularities are all the more sensitive because they call into question the orders of a circuit court to extend voting hours and sequester votes, and the degree to which these allegedly erroneous or void orders resulted in an unfair special election. The use of the judicial branch of government (alleged by Torres to have been done to further the interests of a party to the election), the intervention and alleged impact of the judiciary's exercise of its extraordinary powers upon the actual outcome of this election, and the nature of the challenges to the validity of the circuit court's orders, are deserving of a full hearing in an open court of law and thoughtful, thorough judicial scrutiny.

In my opinion, Torres' complaint raises questions of sufficient gravity and magnitude to warrant the issuance of a preliminary injunction so that the status quo could be maintained until the trial court held a hearing and rendered judgment on the merits of Torres' charges. Accordingly, I would reverse the trial court's denial of Torres' motion for preliminary injunction with directions that the trial court grant said motion and for further proceedings on Torres' complaint for injunctive relief. Furthermore, I would not dismiss the voting-hours appeal without prejudice, but rather would consider the merits of this appeal in conjunction with the appeal from the preliminary-injunction order.